69316. GEORGIA PORTS AUTHORITY v. ROGERS.
(327 SE2d 511)

SOGNIER, Judge.

Larry Rogers brought this action against the Georgia Ports Authority (GPA) seeking occupational accident leave benefits and reinstatement as a GPA employee pursuant to an alleged contract between the parties. The trial court denied GPA's motion for summary judgment and granted Rogers' motion for partial summary judgment, granting him all relief sought and $4,995.60 in benefits pay subject to setoff by the amount of workers' compensation benefits Rogers received. GPA appeals.

1. Appellant contends the trial court erred by finding appellant's Employee Policy and Benefits Manual ("manual") constituted a binding contract between the parties such that appellee became a permanent lifetime employee subject to termination only for violation of the manual's Code of Good Conduct. Appellee had worked for appellant

over six years when he sustained an occupational injury to his back and was terminated by appellant on the basis that he was physically unable to work. Appellant's manual stated that upon an employee's successful completion of a six-month probationary period, "you can be terminated only under the conditions of the Code of Good Conduct." Physical inability to work is not one of the conditions listed in the Code of Good Conduct. Further, the first page of the manual encouraged the employee to read and review the manual carefully in order to "know what your benefits are, how to acquire them and how the employee policies of [appellant] affect you."

We do not view this manual setting forth certain policies and information concerning employment with appellant necessarily as a contract, see *Nelson v. M & M Prods. Co.*, 168 Ga. App. 280 (1) (308 SE2d 607) (1983), and even if considered as a contract, it was clearly terminable at will because it failed to specify a period of employment. See *Runyan v. Economics Lab.*, 147 Ga. App. 53, 54 (1) (248 SE2d 44) (1978). Appellee argues that the language of the manual that an employee can be terminated "only" for violations of the Code of Good Conduct constitutes a specified period of employment, i.e., lifetime. However, upon reading the manual as a whole, it is apparent that it was neither the intent nor the effect of the manual to limit terminations to disciplinary ones listed in the Code of Good Conduct. The manual contains provisions for termination due to military service and layoffs by appellant and the manual's discussion of termination pay includes a list of examples of separations not in good standing such as "discharge for good cause." The inclusion of these specific nondisciplinary terminations in the manual clearly negates the general statement in the beginning of the manual that "only" disciplinary terminations are available to appellant and indicates that the manual's listing of reasons for termination is not exclusive of other possible reasons.

Therefore, in the absence of a definite period of employment, the manual did not bestow upon appellee the status of permanent lifetime employee of appellant. *Runyan*, supra. Employment was thus terminable at the will of either party. Id. The trial court erred by denying appellant's motion for summary judgment and granting appellee's motion for partial summary judgment on this issue. Thus because appellee was discharged lawfully by appellant, it is concomitant with this holding that the trial court erred by ordering that appellee be reinstated as an employee of appellant and that he be paid all benefits accruing between the time of discharge and the court-ordered reinstatement.

2. Appellant further contends the trial court erred by finding appellee was entitled to occupational accident leave pay. The manual provides: "OCCUPATIONAL ACCIDENT LEAVE PAY. To prevent

you from losing pay due to an occupational injury, [appellant] will, upon the physician's declaration that you are unable to work, pay you the difference between your weekly straight-time pay and the amount you receive from weekly workmen's compensation benefits. In no case will you receive more than your weekly straight-time earnings and any overpayment must be reimbursed to the company. If you are injured on the job while in performance of your duties, and not in violation of an established and posted safety rule, your accident leave pay will begin the first day of absence and continue for a period up to thirteen weeks' [sic] for each accident. After you have exhausted your thirteen weeks' paid occupational accident leave, you may use the paid sick and non-occupational leave which you have earned."

"It is the accepted law of this state that an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them, whether the plan is public or private, and whether or not the employee contributes to the plan. [Cits.]" *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). Appellee, by remaining in employment with appellant, became entitled to the payment of 13 weeks' occupational accident leave plus accumulated paid sick and non-occupational leave benefits, conditioned upon fulfillment of the language in the manual. It is undisputed that appellee was injured on the job while in performance of his duties and not in violation of any established, posted safety rule. It is also undisputed that appellant's sole ground for discharging appellee was appellee's inability to work due to his on-the-job injury.

Appellant argues that the benefits appellee contracted for in the manual are not available to terminated employees. In support of its argument, appellant cites *Runyan v. Economics Lab.*, supra. In *Runyan*, a disabled employee, discharged by his employer for insubordination, moonlighting and other policy violations, was denied disability benefits because the court there, looking to the language of the controlling almanac/contract, found that such disability benefits were "short-term" benefits divested upon separation from the company, as opposed to "long-term" benefits which were vested rights payable up to retirement age regardless of the employee's employment status. We affirmed the trial court in *Runyan* because the language in the almanac/contract was plain, unambiguous and capable of only one reasonable construction. *Runyan*, supra at 56.

In the case sub judice, appellant's manual makes no distinction between the types of benefits to which appellee was entitled. Instead, the manual offers a benefit to any employee who is injured on the job while properly performing his or her duty. The language in the manual is plain, unambiguous, and capable of only one reasonable construction. We find nothing in the manual's language which would al-

low appellant to avoid paying these benefits to an employee simply by discharging that employee on the very same grounds for which the employee sought the benefits. Therefore, we find no error in the trial court's order granting appellee's motion for partial summary judgment and denying appellant's motion for summary judgment on the issue of payment of benefits. No error having been enumerated by appellant as to the amount of benefits granted by the trial court, we affirm that part of the judgment.

*Judgment affirmed in part; reversed in part. Deen, P. J., and McMurray, P. J., concur.*

Decided February 11, 1985 —
Rehearing denied February 26, 1985 — 

*Michael J. Bowers, Attorney General, Marion O. Gordon, First Assistant Attorney General, J. Robert Coleman, Senior Assistant Attorney General, Daniel M. Formby, Assistant Attorney General, G. Paris Sykes, Jr.*, for appellant.
*W. Douglas Adams*, for appellee.