73485. SWANSON v. LOCKHEED AIRCRAFT CORPORATION.
(354 SE2d 204)

POPE, Judge.

Appellant Wesley Swanson, Jr. was employed as a special courses instructor by appellee Lockheed Aircraft Corporation at its Marietta, Georgia plant. Lockheed contracts with numerous foreign corporations, which in turn send their employees to Lockheed for instruction. One such customer is Saudi Arabian Airlines, which sends many Saudi nationals to Lockheed for instruction. The record is replete with evidence that, as a group, the Saudi students were obstreperous, destructive and generally unwilling to submit to the authority of their American instructors. Because of this difficulty, Saudi classes generally were small with a student to teacher ratio of 12 to 1. Lockheed had recently decided to implement a new procedure, whereby two instructors would be in a class with 24 students. One of the instructors would teach while the other instructor would take a more passive role, such as sitting in the back of the room working on test papers or other course-related materials.

On the day the incident in question occurred, Swanson was sitting in the back of the room grading test papers while another instructor, Mr. Morgan, attempted to review the test. During this review, the students became increasingly loud and difficult to control; both instructors tried to bring the class under control. (The record indicates that disputes over tests were a common source of problems with the Saudi students.) When the students were dismissed for their break, one of the students, Khaled Al Quithmi, walked up to Swanson

and handed him his test paper, saying that one of his answers had been incorrectly marked wrong. Swanson reviewed the question and informed Quithmi that the question had been taken verbatim from the class textbook and that the correct answer (not Quithmi's) was clearly given in the book. While Swanson and Quithmi were discussing the question, another instructor, Mr. Sain, walked into the classroom and, hearing the exchange, also reviewed the question. Sain started shaking his head and laughing and Quithmi asked him what was so funny. Sain told him that his answer was wrong and that he was funny. Sensing that the situation was getting tense, Swanson suggested to Sain that they go on their break. When Sain turned to leave the room, Quithmi uttered a profanity. Swanson grabbed Quithmi by the arm and reprimanded him for the use of profanity in the classroom. According to Swanson, the other students in the room "apparently thought that there was going to be a confrontation and gathered around as they do, because they stick very closely together." Sain then suggested to Swanson that they leave the classroom. Swanson and Sain walked outside, although they could still see inside the building through double glass doors. Swanson saw Quithmi walk down the hall and approach Mr. Reid, Swanson's supervisor. Although Swanson could not hear the exchange between the two men, he saw Quithmi make a comment to Reid and then make a choking motion with his hands. Swanson walked back inside the building and, admittedly angry, grabbed Quithmi by the arm and questioned him concerning his remarks to Reid. Reid then grabbed Swanson and asked him what was wrong. At this point Swanson noticed a group of students coming down the hall at a fast trot. Reid pushed Swanson against the wall, apparently in an attempt to protect him. The students surrounded Swanson and one of them hit him in the face, knocking his glasses off and one of the lenses out. Reid then pushed Swanson into an office, ending the confrontation. Management was called and the students were told to go home and cool off. Although Swanson could identify neither the students in the crowd nor the student who actually hit him, an eyewitness to the incident identified Mr. Amro Mattar as the student who struck Swanson.

Lockheed subsequently dismissed Swanson. On his notice of dismissal Lockheed stated that Swanson was being terminated for a violation of company rules, specifically Management Directive J-90, No. D-8, which provides for dismissal without notice for serious infractions of company rules "involving misconduct *such as* . . . (8) . . . fighting. . . ."

Swanson filed suit against both Mattar and Lockheed. Lockheed filed a motion for summary judgment, which the trial court granted. In its order granting Lockheed's motion the trial court held that Swanson's tort action against Lockheed was barred by the provisions

of the Workers' Compensation Act, which provides the exclusive remedy for injuries compensable thereunder. OCGA § 34-9-11. The trial court also granted summary judgment for Lockheed on Swanson's wrongful termination claim, holding that because Swanson was employed for an indefinite period, he could be terminated at will. Swanson appeals.

1. We consider first Swanson's argument that the trial court erred in concluding that his common law claim for damages was barred by the Workers' Compensation Act. Swanson does not challenge the general rule that "in those instances where an employee's claim against his employer is one which is covered by the Act, his rights are determinable solely under its provisions and any rights or remedies otherwise available to him against the employer are excluded." *Murphy v. ARA Svcs.*, 164 Ga. App. 859, 860-61 (298 SE2d 528) (1982). See also *Evans v. Bibb Co.*, 178 Ga. App. 139 (4) (342 SE2d 484) (1986). Rather, Swanson posits several arguments, which we will consider seriatim, that his injury is not an "injury by accident arising out of and in the course of employment" as provided in OCGA § 34-9-1 (4) and as interpreted by relevant case law and thus is not compensable under the Act.

(a) Scheduled Break Exception. Swanson's first argument concerns the applicability of the lunch or rest break cases, because "[t]he assault and beating took place during a scheduled break when I was free to do what I wanted to do." We have stated the general rule as follows: " '[W]here the employee is free to use the time as he chooses so that it is personal to him, an injury occurring during this time arises out of his individual pursuit and not out of his employment. [Cits.] Of course, if the employee sustains an injury while conducting the employer's business or following job-related instructions during the "break," the injury is compensable. [Cits.]' [Cit.]" *Home Indem. Co. v. Swindle*, 146 Ga. App. 520 (2) (246 SE2d 507) (1978). See also *Twin City Fire Ins. Co. v. Graham*, 139 Ga. App. 318 (228 SE2d 355) (1976). Clearly, even if the employee is on a scheduled break and even if the employee is free to use the break time as he pleases, if the employee is in fact engaged in employment-related activities, the injury is compensable under the Act.

The record is uncontroverted that at the beginning of the break period, Swanson was engaged in employment-related activities, to wit: discussing test results with a student. When he reprimanded Quithmi for his use of profanity, he was clearly engaged in activities incident to his position as an instructor. Although Swanson ultimately left the classroom and walked outside to take his break, he did in fact come back into the building in order to intercede in the discussion between Quithmi and his supervisor, which Swanson clearly believed was related to his earlier confrontation with Quithmi. It was while he was

engaging in this activity that he was attacked. Swanson testified that he believed the attack was precipitated by the earlier dispute with Quithmi. We believe these facts unequivocally show that at the time Swanson was attacked, and at all times relevant thereto, he was involved in an on-going sequence of events that were clearly related to his employment activities and responsibilities. Under these circumstances, we find the scheduled break exception provides no basis to remove Swanson's claims from the operation of the exclusivity provisions of the Workers' Compensation Act.

(b) Swanson next argues that his injuries are not compensable under the Act because his injury was caused by the wilful act of a third person for reasons personal to him. OCGA § 34-9-1 (4). "Whether the fight resulting in [Swanson's] injuries occurred for 'reasons personal to' [him], thereby excluding those injuries from workers' compensation coverage, depends upon whether the injuries arose out of and in the course of [Swanson's] employment with [Lockheed]. [Cit.]" *City of Atlanta v. Shaw*, 179 Ga. App. 148, 149 (345 SE2d 642) (1986).

In support of this contention Swanson relies on his affidavit filed contemporaneously with his brief in opposition to Lockheed's motion for summary judgment in which he makes the following statement: "The Kingdom of Saudi Arabia abolished slavery in 1962. . . . Until that year, the Saudis actively engaged in the Saudi black slave trade. Saudis are accustomed to viewing blacks in general as subordinate from their cultural point of view. I am a black man. I believe that the attack upon me was provoked in part by the fact that I [am] black. . . . I believe now that some of the actions of the Saudis were racially motivated." When asked in his deposition if he believed his race was related to the problems with the Saudi students, Swanson stated that "[t]here were times [when] I wondered if that was the case." However, Swanson also testified in his deposition that he knew of no instances of racial prejudice, and there is no evidence that any Saudi student ever made remarks to Swanson, or to any other black instructor, that would indicate prejudice due to the instructor's being black. Rather, the record is clear that the Saudi students presented a severe behavior problem to all the instructors regardless of their race.

Swanson contends, however, that his statement in his affidavit constitutes "opinion evidence" which is sufficient to contest Lockheed's motion for summary judgment. See *Morris v. Pulliam*, 168 Ga. App. 442 (2) (309 SE2d 423) (1983). However, it is also the rule in this state that conclusory allegations by way of an affidavit, unsupported by specific allegations of fact, will not be sufficient to avoid summary judgment. *Norton v. Ga. R. Bank &c. Co.*, 248 Ga. 847 (3) (285 SE2d 910) (1982). "[I]t is clearly the law that answers, depositions or affidavits containing mere legal conclusions and allegations

present no issues of fact on a motion for summary judgment. An affidavit in contravention of a motion for summary judgment must state more than mere conclusions; it must state specific adverse facts." *Hyman v. Horwitz*, 148 Ga. App. 647, 649 (252 SE2d 74) (1979).

Swanson's statements concerning alleged racial bias are clearly conclusory allegations wholly unsupported by the record. There being no factual evidence in the record that the attack on Swanson was racially motivated, we find no basis for the argument that the attack on Swanson was for reasons personal to him. Rather, we believe the record clearly shows that the attack was part of an on-going chain of events precipitated by his earlier discussion with Quithmi concerning his test answer and during which Swanson's action in reprimanding Quithmi for profanity admittedly drew a crowd of Saudi students. And, although Swanson does state that he believes that the attack against him was in part racially motivated, he also states that he attributes the incident to the earlier confrontation over test results. We hold, therefore, that this is clearly a case in which Swanson's injury occurred in the course of his employment. " 'An injury arises "in the course of employment" . . . when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto.' [Cit.]" *Murphy*, supra at 861.

(c) Swanson also argues that his injury did not arise out of his employment. "The terms 'arising out of' and 'in the course of' are not synonymous. . . . [A]n injury 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which can not fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work . . . it must be incidental to the character of the business, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service." (Citations and punctuation omitted.) *Murphy*, supra at 861-62; *General Fire &c. Co. v. Bellflower*, 123 Ga. App. 864 (4) (182 SE2d 678) (1971). The record is replete with evi-

dence that the Saudi students were an extreme discipline problem for all the instructors at Lockheed. The management of Lockheed was aware of this problem and had taken steps to ameliorate the situation. In his brief Swanson states that "there is no question that as between the staff and [Swanson] on the one hand and the Saudi students on the other, there had existed a long standing level of disorder, flares of violence, and general outrageous behavior." In his deposition Swanson characterized the situation as a "blackboard jungle." Under these facts it is clear that the conditions and circumstances in the case sub judice were " 'peculiarly conducive to the eventuality which did occur,' " and we find, therefore, that the injury arose out of the employment as provided in OCGA § 34-9-1 (4) and as interpreted by relevant case law. See, e.g., *Helton v. Interstate Brands Corp.*, 155 Ga. App. 607, 608 (271 SE2d 739) (1980).

(d) Swanson also argues that the trial court misapplied the law to the facts. A review of this argument shows, however, that it is for the most part simply a reiteration of Swanson's previous arguments. However, Swanson does argue for the first time that his injury was not an "accident" as that term is used in OCGA § 34-9-1 (4) and therefore is not compensable under the Act. We disagree. "The word 'accident,' as used in the [A]ct, includes every injury except diseases not naturally growing out of injuries arising out of and in the course of employment, injuries caused by the wilful act of a third person directed against such employee for reasons personal to him, and wilful misconduct on the part of the employee. . . ." (Citations and punctuation omitted). *Helton*, supra at 607-08. However, " '(t)he fact that the injury resulted from a wilful or criminal assault by a third person, while the employee is engaged in work of his employer does not necessarily prevent the injury from being accidental within the meaning of the Compensation Act. [Cits.]' " *Fountain v. Shoney's Big Boy*, 168 Ga. App. 489, 490 (309 SE2d 671) (1983). "A felonious assault does not prevent the resulting injury from being treated as an accident under the (workers') compensation law if the wilful act is not directed against the employee for reasons personal to the employee." (Citations and punctuation omitted). *Helton*, supra at 608.

Since we have held that the record is completely devoid of evidence that the attack was by third persons for reasons personal to Swanson and "[n]ot being a disease or otherwise coming within the exclusionary provisions of [OCGA § 34-9-1 (4)] [we find that Swanson's] injury resulted from an 'accident' as contemplated by the Act." *Helton*, supra at 608.

(e) Lastly, Swanson argues that the trial court erred in its interpretation of the facts. In support of this argument Swanson attempts to show that the discussion over test results and the subsequent attack were unrelated. This argument clearly is contrary to both the

record in this case and Swanson's own testimony. Moreover, accepting this argument leads to an absurd result, to wit: that on the day in question, a group of unprovoked Saudi students decided they would attack Swanson and came "at a trot" to find him, their behavior being totally unimpeded by the presence of another instructor and Swanson's supervisor as well as at least one other Lockheed employee who was an eyewitness to the incident.

Swanson also argues that his action against Lockheed was not proper for summary adjudication because he alleged that Lockheed was negligent in that it breached its duty to protect him and such issues are jury questions. Pretermitting the question of negligence, if any, the fact that Swanson has argued a negligence theory does not operate to eviserate the exclusivity provisions of the Workers' Compensation Act. See *Southern Wire &c. v. Fowler*, 217 Ga. 727 (2) (124 SE2d 738) (1962).

For the foregoing reasons, we find that Swanson's injury was clearly within the purview of the Workers' Compensation Act and that his remedy, if any, lies exclusively under the provisions of the Act. We hold, therefore, that the trial court did not err in granting summary judgment to Lockheed on this issue.

2. We have also examined Swanson's contention that the trial court erred in granting summary judgment on his wrongful termination claim. The record shows that when Swanson accepted employment with Lockheed, he signed a document entitled "Acknowledgement of Employment Conditions" wherein it stated that "[u]nless otherwise stated above, the Company intends employment to be on a regular basis for an indefinite period; however, I understand there is no guarantee concerning the duration of employment or hours to be worked each week." " 'It is well settled that in this state "(a)n indefinite hiring may be terminated at will by either party, with or without cause, and there is no cause of action against an employer for an alleged wrongful termination. [Cits.]" [Cit.]' " *Hickman Datsun v. Foster*, 181 Ga. App. 229, 230 (351 SE2d 678) (1986). See also OCGA § 34-7-1.

Although conceding the applicability of the general rule, Swanson, relying on authority from other jurisdictions, contends that in the case sub judice Management Directive J-90 (1) constituted a waiver of the right to terminate at will, and (2) created an implied contract for employment. This issue has been decided adversely to Swanson in the case of *Georgia Ports Auth. v. Rogers*, 173 Ga. App. 538 (1) (327 SE2d 511) (1985). In *Rogers*, the employee manual specifically stated that " 'you can be terminated only under the conditions of the Code of Good Conduct.' " Id. at 539. Nevertheless, the court rejected appellant's argument that the manual constituted a binding contract between the parties, holding that "[w]e do not view

this manual setting forth certain policies and information concerning employment with appellant necessarily as a contract, [cit.], and even if considered as a contract, it was clearly terminable at will because it failed to specify a period of employment." Id.

We have reviewed Directive J-90 and believe it presents an easier question than that decided by the court in *Rogers*. Firstly, Directive J-90 did not provide that the infractions listed therein would provide the sole basis for termination. The document provides that "*Dismissal . . .* shall result from a serious infraction of a Company rule involving misconduct *such as:* . . ." "[U]pon reading the manual as a whole, it is apparent that it was neither the intent nor the effect of the manual to limit terminations to [infractions] listed in the [manual.]" Id. Rather, we find that the list of infractions was for illustrative purposes only so that the employee had notice of the types of offenses which the company believed were of such a serious nature that termination would be warranted.

Moreover, as was also the case in *Rogers*, Directive J-90 clearly does not specify a period of employment. Thus, even if this document constituted a contract, Swanson's employment was terminable at the will of either party. Id.; see *Georgia Power Co. v. Busbin*, 242 Ga. 612 (1) (250 SE2d 442) (1978). Lastly, we note that to hold otherwise would have the effect of discouraging employers from issuing guidelines and directives, which oftentimes are both necessary and of great benefit to the employee. The trial court did not err in granting Lockheed's motion for summary judgment on Swanson's wrongful termination claim.

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 25, 1987.

*Carl V. Kirsch*, for appellant.
*Tommy T. Holland, Robert P. Barton, Barbara B. Holmes*, for appellee.