## A98A0945. BREWER v. SCHACHT et al.
(509 SE2d 378)

SMITH, Judge.

This litigation appears before us for the second time. In its first appearance in *Professional Practices Comm. v. Brewer*, 219 Ga. App. 730 (466 SE2d 651) (1995), we affirmed the trial court's denial of defendants' motion for summary judgment. We now affirm the trial court's grant of defendants' renewed summary judgment motion, for the reasons stated below.[1]

A complete and detailed recitation of the facts giving rise to this litigation is given by the federal district court in *Brewer v. Purvis*, 816 FSupp. 1560 (M.D. Ga. 1993), aff'd, 44 F3d 1008 (11th Cir. 1995). The Professional Practices Commission ("PPC") was created by the State of Georgia to investigate state-certified teachers and other "professional educators," former OCGA § 20-2-792 (2), concerning certain violations of state law pertaining to educators or education, the commission's ethics code, and state and local board rules, regulations, or standards. Former OCGA § 20-2-796.[2] The PPC investigated an incident at Cedar Shoals High School in which a student's grades allegedly were changed to enable him to play football. At that time, Brewer was a teacher and head football coach at the school. *Brewer v. Purvis*, supra at 1563. Appellee Good, an associate director of the PPC, wrote a report recommending that Brewer's teaching certificate be suspended and appellee Schacht, executive director of the PPC, presented that report to the Clarke County School District in an open meeting.[3] Id. at 1566-1567. This action by Brewer followed.

Brewer originally filed a state court complaint under 42 USC § 1983 against the Clarke County School District, its superintendent, the Georgia High School Association and its executive director, the

---

[1] A trial court has discretion to consider a second motion for summary judgment after having previously denied summary judgment. *Etheridge v. Fried*, 183 Ga. App. 842 (1) (360 SE2d 409) (1987).

[2] OCGA §§ 20-2-790 through 20-2-800 were repealed by Ga. L. 1998, p. 750, effective July 1, 1998.

[3] After a full evidentiary hearing, a hearing tribunal of the PPC declined to impose a suspension but instead recommended a public reprimand.

PPC, Schacht, and Good. *Professional Practices Comm. v. Brewer*, supra at 731. The action was removed to the United States District Court for the Middle District of Georgia, which granted summary judgment on some issues and allowed some claims to continue in federal court. *Brewer v. Purvis*, supra at 1580. The district court also remanded to the state court Brewer's claims against the PPC and against Schacht and Good in their official capacities only, on the basis of Eleventh Amendment immunity. Id. at 1571. The PPC, Schacht, and Good then moved for summary judgment in Clarke County Superior Court.

In *Professional Practices Comm. v. Brewer*, supra, this Court reversed in part and affirmed in part the trial court's denial of summary judgment to the PPC, Schacht, and Good. While holding that the trial court improperly denied summary judgment on any claim asserted under 42 USC § 1983, we affirmed the denial of summary judgment on the remaining state law tort claims because appellees failed to raise the issue below. Id. at 732. On remand, appellees renewed their motion for summary judgment on the state law claims, and Brewer also moved for summary judgment. In two orders, the trial court denied Brewer's motion and granted summary judgment to appellees.

1. In ruling on appellees' motion for summary judgment, the trial court relied upon OCGA § 9-12-40 and the earlier rulings of the federal district court. In resolving this appeal, we must first consider the scope and effect of the district court's earlier rulings and its remand of the state law claims. The district court relied upon Georgia's Eleventh Amendment immunity to determine that it lacked subject matter jurisdiction over the claims against the PPC, *Brewer v. Purvis*, supra at 1569, and that Schacht and Good were also entitled to immunity in their official capacities. Id. at 1570. It therefore remanded those claims to the Clarke County Superior Court. Id. at 1571. The district court reserved ruling on the claims against Schacht and Good in their individual capacities and directed Brewer to submit an additional brief on the subject. Id. In a subsequent order, the district court granted summary judgment on this issue, noting that in its previous opinion it held "that Brewer had not been deprived of his property interests without due process of law in his teaching position and that he did not have a property interest in his coaching position." The district court also noted that "[t]he only other potential property interest that the Plaintiff has is his teaching certificate. That interest, however, is the subject of Plaintiff's claims against the PPC and Good and Schacht in their official capacities, which were remanded to the state court."

In granting summary judgment, the trial court relied upon the findings of the district court, citing OCGA § 9-12-40: "A judgment of a

court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." Res judicata and collateral estoppel are related and similar, but separate, doctrines. "The former, also known as claim preclusion, requires a plaintiff to bring all his claims against a party (or its privies) arising out of a particular set of circumstances in one action; while the latter, sometimes called issue preclusion, prevents relitigation of an issue already litigated by the parties (or their privies). In other words, under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." (Citations and punctuation omitted.) *Sorrells Constr. Co. v. Chandler Armentrout & Roebuck, P.C.*, 214 Ga. App. 193-194 (447 SE2d 101) (1994).

The trial court was correct in holding that collateral estoppel prevents issues decided in the federal action from being relitigated in this state action against Schacht and Good or their employer, the PPC. "Privies are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Langton v. Dept. of Corrections*, 220 Ga. App. 445, 446 (1) (469 SE2d 509) (1996). In *Langton*, we affirmed a grant of summary judgment to the Department of Corrections and several of its employees, relying upon the collateral estoppel effect of an earlier finding, involving Langton's claim for unemployment benefits, that she had been terminated for cause: "Inasmuch as the defendants include the DOC and its privies, the trial court properly granted summary judgment." Id. While a servant ordinarily is not in privity with a master, "a master has privity with his servant and can claim the benefit of an adjudication in favor of the servant[.] [Cit.]" *Gilmer v. Porterfield*, 233 Ga. 671, 674 (2) (212 SE2d 842) (1975). Also, Brewer has alleged that the PPC, Schacht, and Good were parties to a conspiracy against him, and "[c]o-conspirators are considered to be in privity." *McIver v. Jones*, 209 Ga. App. 670, 672 (a) (434 SE2d 504) (1993). And claims against Schacht and Good in their official capacities are the equivalent of suits against the PPC, the governmental entity that employed them. *Franklin v. Gwinnett County Pub. Schools*, 200 Ga. App. 20, 26 (3) (407 SE2d 78) (1991). Accordingly, the district court's determinations with regard to Brewer's property interest claims in his coaching and teaching positions are binding upon Brewer in this litigation with

Schacht, Good, and their master in privity, the PPC, and the trial court correctly gave collateral estoppel effect to the district court's findings.

2. As the district court correctly observed, the remaining issue is Brewer's property interest in his teaching certificate. "Both the Georgia and Federal Constitutions prohibit the state from depriving 'any person of life, liberty, or property, without due process of law.' " (Footnote omitted.) *Atlanta City School Dist. v. Dowling*, 266 Ga. 217, 218 (466 SE2d 588) (1996). "[O]nce the State issues a professional license, such as the teaching license at issue in this case, its continued possession may become essential to the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important property interests of the licensees. In such cases, the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." (Citations and punctuation omitted.) *Gee v. Professional Practices Comm.*, 268 Ga. 491, 493 (1) (491 SE2d 375) (1997).

In this case, as in *Gee*, the statutory scheme "more than satisfies the requirements of procedural due process." Id. "In cases such as this, due process requires that some form of a hearing must be held before one is finally deprived of their property interest in a professional license." Id. But Brewer's teaching certificate was never revoked or even suspended. After the hearing required by procedural due process, the hearing tribunal of the PPC declined to impose the recommended suspension. Because the review process not only was available but redressed any procedural due process deprivation that Brewer may have suffered, he cannot maintain this claim. *Dowling*, supra at 219; see also *Rogers v. Ga. Ports Auth.*, 183 Ga. App. 325, 328 (2) (358 SE2d 855) (1987).

3. Brewer also contends that he may maintain a claim for deprivation of a state constitutional liberty interest on the basis of injury to his reputation. The rule governing such claims in the United States Court of Appeals for the Eleventh Circuit has been adopted by this Court: "Under federal law, a plaintiff can recover for a deprivation of reputational liberty upon proof of the following elements: (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing. *Buxton v. City of Plant City, Fla.*, 871 F2d 1037, 1042-43 (11th Cir. 1989). [Cit.]" (Punctuation omitted.) *Maxwell v. Mayor &c. of Savannah*, 226 Ga. App. 705, 710 (3) (487 SE2d 478) (1997). In *Rogers*, supra at 328 (2), this Court applied this rule to a liberty

interest claim.[4] As the trial court correctly observed, appellees here were not Brewer's employers. Brewer contends that a reputational liberty claim is not confined to a statement made by a governmental employer in connection with a discharge, citing a single authority from another federal circuit that has not adopted the Eleventh Circuit rule. But the Eleventh Circuit has declined to expand the limits of its test for a reputational liberty claim into areas generally governed by state tort law. A recent decision makes clear that a false statement made by a government official with intent to drive a non-employee plaintiff out of business, even if it results in injury to reputation and employment prospects, "may well be a tort, but it is not a violation of the right to due process of law." *Cypress Ins. Co. v. Clark*, 144 F3d 1435, 1438 (11th Cir. 1998). Because appellees were not Brewer's employers, Brewer has failed to show the required elements of a reputational liberty claim.

4. (a) We next consider the trial court's grant of summary judgment, based upon the statute of limitation, on Brewer's defamation claims. To the extent that Brewer's claims seek damages for injury to reputation, we agree with the trial court that such claims are barred by the applicable statute of limitation. Actions for injuries to the reputation must be brought "within one year after the right of action accrues." OCGA § 9-3-33. Brewer's complaint was not filed until February 7, 1991, more than one year after the PPC's report was submitted in an open meeting on February 1, 1990.

Brewer argues that the cause of action did not arise until injury occurred. This contention was considered and rejected in *Cunningham v. John J. Harte Assoc.*, 158 Ga. App. 774 (282 SE2d 219) (1981). "[A]ctions for injuries to the reputation, such as those asserted by the plaintiff in the instant case, must be brought within one year from the date of the alleged defamatory acts regardless of whether or not plaintiff had knowledge of the act or acts at the time of their occurrence." (Citations and punctuation omitted.) Id. at 775. The trial court correctly granted summary judgment on Brewer's defamation claims.

(b) To the extent that Brewer seeks damages for tortious interference with his employment contract, the one-year statute of limitation for defamation actions is inapplicable, even if the interference allegedly was accomplished through defamation. *Lee v. Gore*, 221 Ga. App. 632, 634-635 (472 SE2d 164) (1996). But this does not end our analysis. To state a claim for tortious interference with employment,

[4] In *Rogers*, the plaintiff asserted only state law claims seeking reinstatement and supplemental salary payments. Neither that opinion nor the case's earlier appearance, *Ga. Ports Auth. v. Rogers*, 173 Ga. App. 538 (327 SE2d 511) (1985), indicates whether Rogers's liberty interest was asserted on federal or state constitutional grounds.

Brewer must show "the existence of an employment relationship, interference by one who is a stranger to the relationship, and resulting damage to the employment relationship. In addition, it must be shown that the alleged intermeddler acted maliciously and without privilege." (Citations omitted.) Id. at 634. Any claim for tortious interference with Brewer's employment must fail because, as the trial court correctly found, appellees' actions were privileged under OCGA § 51-5-7.

The portion of that Code section relevant here states: "The following communications are deemed privileged: (1) Statements made in good faith in the performance of a public duty." While the privileges provided in OCGA § 51-5-7 are ordinarily asserted in defense to a defamation claim, they may also be asserted as a defense to a claim for tortious interference with contractual relations. *NationsBank v. SouthTrust Bank*, 226 Ga. App. 888, 892 (1) (A) (1) (487 SE2d 701) (1997) (applying OCGA § 51-5-7 (3)).

As noted above, the PPC and its employees acting in their official capacity were authorized by statute to investigate alleged violations of law, rules, regulations, or standards by certified teachers. They also were authorized to present their report and recommendations to the Clarke County School District under former OCGA § 20-2-797 (a).

In order to overcome this privilege, Brewer must show actual malice in making the statements. *Kitfield v. Henderson, Black & Greene*, 231 Ga. App. 130, 132 (2) (498 SE2d 537) (1998) (privilege under OCGA § 51-5-7 (3)). Although Brewer asserts that appellees did not act in good faith, he "has not pointed to specific evidence giving rise to a triable issue." (Citation and punctuation omitted.) *Fly v. Kroger Co.*, 209 Ga. App. 75, 78 (2) (432 SE2d 664) (1993) (good faith statement in performance of public duty under OCGA § 51-5-7 (1)). Unsupported inferences or conjecture regarding a defendant's motivation do not suffice to show malice. *Cohen v. Hartlage*, 179 Ga. App. 847, 851-852 (348 SE2d 331) (1986) (libel). This is particularly true when the defendant testifies affirmatively that he did not know the plaintiff before conducting the investigation. Id. Both Schacht and Good testified that they had no personal or professional knowledge of or relationship with Brewer before the investigation began. Brewer therefore has failed to show the elements of a claim for tortious interference with contract.

5. Finally, Brewer complains that the trial court erred in entering its own order rather than merely reducing to writing a verbal ruling made at the motion hearing by a predecessor trial judge before

his retirement.[5] But that verbal ruling was never reduced to writing, and it is axiomatic that "what the judge orally declares is no judgment until the same has been reduced to writing and entered as such. [Cits.]" *Tyree v. Jackson*, 226 Ga. 690, 694 (2) (177 SE2d 160) (1970).

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 17, 1998

*Deedra M. Brewer*, for appellant.

*Thurbert E. Baker, Attorney General, Christopher A. McGraw, Assistant Attorney General*, for appellees.

---

[5] That ruling granted in part and denied in part appellees' motion for summary judgment.