[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 98-8436

———————————————

D. C. Docket No. 1:96-CV-3509-MHS

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/29/99
THOMAS K. KAHN
CLERK**

CITY OF MARIETTA,

Plaintiff-Appellant,

versus

CSX TRANSPORTATION, INC.,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia

———————————————
**(November 29, 1999)**

Before EDMONDSON, COX and MARCUS, Circuit Judges.

COX, Circuit Judge:

CSX Transportation, Inc. (CSX) runs a railroad that passes through Marietta, Georgia. When CSX closed two pedestrian grade crossings in Marietta without warning, the City of Marietta sued. The district court granted CSX summary judgment, and Marietta appeals. Because CSX leases the railroad from the State of Georgia, we raised sua sponte the issue of whether Georgia is an indispensable party under Fed. R. Civ. P. 19. We conclude that the action may proceed without Georgia, and we certify a core, dispositive issue of Georgia law to the Georgia Supreme Court.

## I. Background

Marietta, a municipal corporation organized under Georgia law, received its first charter in 1834. What Marietta's street plan looked like at the time, and how streets came to belong to the City, is something of a mystery on this record: A few years after Georgia's legislature voted to withdraw from the United States, the United States government sent soldiers to burn the Cobb County courthouse (among other structures), and Georgia was unable to prevent it. Many early property records went up in smoke, through no fault of the City's.

The State of Georgia built its first railroad not long after the State first chartered Marietta. Established by the State in 1836, the Western & Atlantic (W&A) line stretches from Atlanta to Chattanooga; it was complete in Cobb County and Marietta

by 1846. Although Georgia stopped operating the railroad in 1870, leasing it instead to private corporations, Georgia has never relinquished ownership.

The summary judgment record of post-General Sherman documents shows that at least since the end of the 19th century, there have been two crossings over the W&A in downtown Marietta called Depot and Dobbs Streets. They appear as full-blown streets on post-Reconstruction Sanborn insurance maps; a state survey of the railroad from a hundred years ago notes the streets' existence; and 1920s schoolchildren used the streets on their way to classes and to fetch ice from the ice station on Dobbs Street. More recently, the streets have served as access between parking areas on one side of the tracks and businesses on the other. In 1978, the Downtown Marietta Development Authority, which is not affiliated with the City, entered license agreements with the Louisville and Nashville Railroad Company (L & N), CSX's predecessor in interest, to build and maintain the crossing at Depot Street. The next year, the L & N asked the City to close Dobbs Street to motor traffic, which the City did in exchange for a promise to construct a pedestrian crossing at Dobbs Street and to remove sidetracks at another crossing. In the mid-1990s, the City planned downtown landscaping and disabled-access improvements that relied in part on the continued availability of these crossings.

The streets' history came to an end in 1996. That year CSX built a second mainline track on the W&A line. To accommodate construction, CSX temporarily closed several grade crossings in the old downtown area of Marietta. When construction was completed, CSX restored five grade crossings,[1] but left chain-link fence across the two pedestrian crossings at Depot and Dobbs Streets. CSX concluded that these two crossings presented increased hazards with the addition of the second mainline track.

CSX did not discuss with Marietta its decision to close the crossings, nor did it provide written notice to Marietta before erecting the barricades. In October 1996, Marietta adopted a resolution officially opposing the closure of Depot and Dobbs Streets. Marietta made repeated demands to CSX to reopen the crossings.

Marietta's position relies in part on its charter. The most recent charter, enacted in 1977, confers on Marietta the authority "[t]o lay out, open, extend, widen, narrow, establish or change the grade of, abandon, *or close*, construct, pave, curb, gutter, adorn with shade trees, otherwise improve, maintain, repair, clean, prevent erosion of, and light, streets, roads, alleys, sidewalks, walkways, and other public ways." (R.4-34-Ex.

---

[1]     CSX restored the five grade crossings at Waverly Way, Whitlock Avenue, Mill Street, Polk Street, and Kennesaw Avenue.

3 § 2.16(21) (emphasis added).)[2]  Marietta's charter also grants it the power "[t]o regulate and control public streets, roads, alleys, sidewalks, walkways and other public ways; *and to prevent the blocking of streets, roads, alleys, sidewalks, walkways, and other public ways, and railroad crossings*." (*Id*. § 2.16(22)(emphasis added).)

CSX, on the other hand, claims a right to close the crossings under its current lease agreement with the State.  The lease gives CSX the right to remove unlawful encumbrances:

> Lessee may remove and cause to be discontinued, as permitted by law, any or all encroachments and other adverse uses and occupancies in and upon the right-of-way or upon other properties of the Western and Atlantic Railroad, or any part thereof, whether maintained under claim of lawful right or otherwise.  The Lessee in its own name and behalf[] may undertake to remove and cause the discontinuance of such encroachments, uses and occupancies, acting therein in its own name.

(R.1-4-Unnumbered Ex. at 34.)

Marietta and CSX were unable to agree whether Dobbs and Depot Streets were unlawful encumbrances over the rails or public ways appropriately under Marietta's control.  Marietta then sued.

---

[2]  If a municipality wishes to close a road, it must comply with the statutory procedures set forth in O.C.G.A. § 32-7-2.

Marietta's complaint, first filed in Cobb County Superior Court and later removed by CSX on diversity grounds, contains six substantive claims:[3] (1) that the City had a prescriptive easement to the Dobbs and Depot Street crossings (Count I); (2) that Marietta and the railroad dispute whether Dobbs and Depot Streets are "public" roads, and the court should declare that they are; (3) that CSX's closure of the crossings is a public nuisance, subject to abatement (Count III); (4) that CSX has been negligent as a matter of law for failing to comply with O.C.G.A. § 32-6-190, which requires railroads to maintain grade crossings for safe public passage, and § 32-6-191, which requires railroads to bear the expense of repairing grade crossings after addition of new tracks (Count IV); (5) that CSX violated O.C.G.A. § 46-8-103, which prohibits railroads from appropriating public highways, bridges, and ferries (Count V); and (6) that CSX owes Marietta attorney fees because CSX has been stubbornly litigious.

Following discovery, both parties moved for summary judgment. The district court initially granted Marietta's motion and denied CSX's. The district court concluded that Marietta's rights under its charter were superior to CSX's lease rights because Marietta's rights preceded CSX's, and because CSX's lease explicitly leaves

---

[3] One of the separately numbered "counts" (VI) is simply a request for injunctive relief, presumably on the basis of the five substantive counts, and another (VIII) seeks punitive damages.

prior inconsistent statutes undisturbed.[4] The court also concluded that "when viewed in the context of other state statutes regarding closure of roads, it is clear that the Georgia legislature did not intend to authorize CSXT's unilateral closure of municipal roads." (R.5-51 at 6.) Finally, the district court concluded that public policy supports Marietta's position, because ruling in favor of CSX would allow it to close, on a whim, any of the many municipal streets that it crosses.

The same day that the district court issued this order, Georgia filed a brief as amicus curiae. CSX then moved the court to reconsider its decision in light of the State's brief. The court did so and concluded that the State intended for street crossings (particularly Depot and Dobbs Streets) to constitute "encumbrances" under CSX's lease and that the State had therefore conveyed to CSX the power to close the crossings unilaterally. The court accordingly vacated its first order and granted CSX's motion for summary judgment. Marietta appeals.

Marietta attacks the district court's judgment on both procedural and substantive grounds. Procedurally, Marietta complains that the district court should not have permitted Georgia to file so late an amicus brief, and then rely on that brief

---

[4] The lease provides: "It is expressly agreed that this Lease is made subject to the aforesaid Acts and Resolutions of the General Assembly of Georgia, and the Official Code of Georgia Annotated, authorizing the making of this Lease and that if any of the terms or conditions in this Lease are found to be deficient or in conflict or inconsistent with any of the terms or provisions of them in such event their terms and provisions of shall govern and control, and all other terms, conditions and provisions of this Lease shall continue in full force and effect the same as if such statutory terms and provisions had been expressed herein." (R.1-4-Unnumbered Ex. art. 16.)

7

— which had no supporting evidence — to reverse its earlier decision without additional briefing. Because we believe this to be within the discretion of the district court, we affirm without further discussion its decision to handle the amicus brief this way.

We can deal with the first of Marietta's two substantive challenges with equal dispatch. Marietta contends that the district court was right the first time: the lease is explicitly subject to Marietta's charter. Having read the charter and the lease (which explicitly yields ground only to the acts and resolutions authorizing the making of the lease), we are confident that the district court correctly decided to revisit its initial decision on this issue. Of the issues that Marietta raises, therefore, there remains before us only Marietta's contention that the district court should have accepted its primary argument for judgment in its favor: that Dobbs and Depot Streets are indisputably dedicated public ways beyond the control of CSX. We consider this issue de novo because we are reviewing a grant of summary judgment. *See Ross v. Clayton County, Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999).

Because of the potential danger to federal subject-matter jurisdiction,[5] this court has sua sponte injected another issue in the case: whether Georgia is an indispensable party to this action under Fed. R. Civ. P. 19. (If Georgia were joined, diversity would

---

[5] *See Jett v. Zink*, 362 F.2d 723, 726 (5th Cir. 1966); *see also Liddy v. Urbanek*, 707 F.2d 1222, 1223 n.2 (11th Cir. 1983) (absence of an indispensable party, whose presence would defeat diversity jurisdiction, may be raised for the first time on appeal).

disappear because the state is not a citizen. *See University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999).) The parties, along with Georgia as an amicus curiae, have filed supplemental briefs addressing this question. Because this issue gnaws at our jurisdiction, we address it before reaching the merits of Marietta's appeal.

## II. Discussion

### A. Georgia's Indispensability

Rule 19 provides a two-part test for determining whether an action should proceed in a nonparty's absence. The first question is whether complete relief can be afforded in the present procedural posture, or whether the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject parties to a risk of inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)-(2). Only if we can answer this threshold question "yes," and if the nonparty cannot be joined (say for jurisdictional reasons), do we go to step two. *See Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8, 111 S. Ct. 315, 316 (1990). Step two asks us to determine, "in equity and good conscience," whether the action should go forward as cast. *See* Fed. R. Civ. P. 19(b). The Rule provides us four factors to consider. *See id.*; *see also Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999). The Supreme Court has instructed us in this step-two analysis to eschew formalism in favor of flexible

9

practicality. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19, 88 S. Ct. 733, 742-43 (1968).

A question common to both steps of the analysis here is whether Georgia would likely be bound by a judgment declaring Dobbs and Depot Streets to be public and enjoining CSX to remove the barriers on those passageways. Because the matters at issue here primarily concern property law, which is principally a state domain, and the federal courts would not have diversity jurisdiction over an action with Georgia as a party, we expect that any future litigation over Depot and Dobbs Streets would be in Georgia courts. Georgia courts apply Georgia's law of judgments to res judicata and collateral estoppel questions, even when the prior judgment is federal. *See, e.g., Chilivis v. Dasher*, 225 S.E.2d 32, 35 (Ga. 1976); *Hardy v. Georgia Baptist Health Care Sys.*, ___ S.E.2d ___, 239 Ga. App. 596, ___ (1999); *Willis v. National Mortgage Co.*, 509 S.E.2d 403, 405 (Ga. Ct. App. 1998).

In Georgia, "[c]ollateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *Waldroup v. Greene County Hosp. Auth.*, 463 S.E.2d 5, 7 (Ga. 1995). "Privies are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Brewer v. Schacht*, 509 S.E.2d 378, 381 (Ga. Ct. App. 1999). At first blush, one might think that a tenant has stepped into the owner's shoes, and may

10

thus bind the owner, when the tenant defends a prescriptive easement and declaratory judgment action like this one on the grounds that his usufruct, which is coextensive with the landlord's estate, is superior to the plaintiff's claimed interest. But the Georgia Supreme Court has held to the contrary: When a third party sues a tenant on a claim challenging the tenant's right to possession, and the tenant asserts a right identical to the landlord's, the judgment between the third party and the tenant does not bind the landlord. *See Mathews v. Brown*, 219 S.E.2d 701, 703 (Ga. 1975). What that is likely to mean here is that any favorable judgment Marietta secures against CSX will not later preclude Georgia from asserting a right, as fee-simple owner of the railroad's right of way, to close the same streets.

Even though any judgment here will not likely bind Georgia, for two reasons the first step of Rule 19 analysis may well be satisfied, and Georgia may thus be a necessary party to this action. First, the district court in this action cannot afford complete relief to Marietta, in a temporal sense: even if Marietta succeeds in having CSX remove the barriers on Dobbs and Depot Streets, a future tenant (or the State itself) could re-erect the barriers without fear of contempt. A possibility thus lingers that this action's end will not end the story. Second, Georgia has practical interests at stake here. Whether or not Georgia is bound by the judgment in this action, when we adjudicate CSX's rights we may be adjudicating Georgia's because Georgia has

11

conveyed to CSX its power to remove encumbrances. Even a nonbinding adjudication casts doubt on Georgia's right to remove the encumbrance in question. *Cf. Schutten v. Shell Oil Co.*, 421 F.2d 869, 874 (5th Cir. 1970) (potential creation of a mere cloud on title is sufficient prejudice to make a party's joinder desirable). If for these reasons Georgia is a necessary party, the next question is whether this action can proceed without it.

With the aid of Rule 19's four factors, we can conclude "in equity and good conscience" here that this action may continue without Georgia. Fed. R. Civ. P. 19(b). Rule 19(b) asks first how prejudicial a judgment without Georgia will be to Georgia, Marietta and CSX. Georgia, as we have discussed, will not be bound by the judgment in this action, so this litigation will not permanently deprive Georgia of any interest. Nor would Georgia be subject, as far as we can tell, to any resulting liability. The lease provides no warranty that the W&A right of way is free of lawful encumbrances. Finally, we reject Georgia's argument that it will be severely prejudiced if Marietta wins, because the City will have judicially bypassed the legislative route prescribed by state law for municipalities to seek access to state property. Maybe so, but the issue here is whether the public has acquired the right to cross the W&A at Dobbs and Depot Streets, under Georgia law; if Marietta wins under Georgia law, it means that Georgia law permits just this kind of bypass, and Georgia has suffered no cognizable

12

prejudice. From these points, we conclude that prejudice to Georgia is limited to the practical matters we noted above that give Georgia an interest to begin with. Those weigh light on Rule 19's scales because of the lack of any obvious and immediate consequences to the State.

With Georgia out of the picture, Marietta too will find this litigation to be less than perfect, but the deficiencies are minor. If Marietta procures a judgment requiring CSX to remove the chain-link fences from the Dobbs and Depot Street crossings, that judgment will bind only CSX. Because the lease explicitly reserves to Georgia the nonexclusive right to sue to free the W&A of adverse uses, the State itself could at some time in the future theoretically have Depot and Dobbs Streets closed. But there is no suggestion in the record or the briefs that Georgia would do such a thing. Moreover, Marietta's failure to seek to join the State from the outset suggests that Marietta is not concerned with such an eventuality.

Finally, there is CSX. Georgia argues that CSX faces the risk of conflicting obligations: if a court order forces it to remove the chain-link from Depot and Dobbs Streets, it will then violate the lease by breaching its "duty to clear obstructions to the operation of the railroad." (Ga.'s Supp. Br. at 6.) The lease's language does not support this assertion. The cite that Georgia provides is to CSX's right to remove obstructions: "Lessee may remove and cause to be discontinued, as permitted by law, any or all encroachments . . . ." (R.1-4-Unnumbered Ex. art. 14.) Obviously, that

13

CSX "may" remove encroachments does not mean that it must. Georgia also asserts that CSX will be liable to the State for permitting the creation of a new crossing. The problem here is that Dobbs and Depot Streets were undisputedly open to pedestrian traffic in 1986, when Georgia and CSX entered the present lease. So it is hard to see how CSX's loss in this litigation would improperly open a "new" crossing. Having reviewed these assertions of prejudice, we are persuaded that the possibility of prejudice alone to any interested person here is small enough that the first factor of Rule 19 does not weigh heavily against proceeding without Georgia.

On the other hand, the second and third elements—whether a court may reduce prejudice with a well-crafted judgment, and whether such a judgment would be adequate—point strongly toward proceeding with the present action. What Marietta wants, as we read the complaint, is for CSX to take down its chain-link fences and not put them back up.[6] A judgment ordering CSX to do that would not implicate any of Georgia's asserted interests except in the abstract sense that along the way Georgia's right to exclude the public from Dobbs and Depot Streets would have been adjudicated, even if not bindingly. *Cf. Kentucky v. Garner*, 896 S.W.2d 10, 13-15 (Ky. 1995) (applying Kentucky's Rule 19 to determine that the United States was not an indispensable party to an action to remove gates, erected by a licensee, from

---

[6]     Puzzlingly, Marietta insists in its supplemental briefing that it seeks merely notice and a hearing before Dobbs and Depot Streets are closed for good. The complaint contains no such claim, however, and Marietta cites no Georgia cases suggesting that any of the present state-law causes of action carry such due-process rights as a remedy.

14

blocking claimed easements across U.S. property). The expected judgment would thus minimally implicate Georgia's interests. It would, furthermore, satisfy Marietta's immediate need to have pedestrian access across the tracks.

The final factor (whether Marietta would have an adequate remedy elsewhere) is perhaps the most important factor here, and it compels going forward. While Marietta could certainly litigate this claim in the Georgia courts — as it sought to do before CSX removed the action — federal proceedings have now progressed, at CSX's instance and without timely intervention from Georgia, from discovery through final judgment. Marietta's quest for the simple injunctive relief it wants has so far taken more than three years, and if the action must be remanded to state court and Georgia joined (assuming it does not have sovereign immunity), we can expect further delays. Thus, while the parties' arguments give us no reason to question the adequacy of a state-court proceeding in a strict legal sense, the delay of sending litigation that is so advanced to another forum counsels going forward. *Cf. Provident Tradesmans Bank & Trust Co.*, 390 U.S. at 111, 88 S. Ct. at 739 (court of appeals addressing Rule 19 issue for the first time on appeal must take into account the action's degree of progression in this forum).

Three of Rule 19's factors thus point toward proceeding without Georgia; the first factor weighs only lightly in favor of dismissal. We thus conclude that Georgia is not an indispensable party to this action.

*B. The Merits*

This court may certify questions of state law to the state's highest court if there is an unsettled question of state law that is dispositive of an issue in the appeal. *See, e.g.*, *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1219 (11th Cir. 1999). Our review of Marietta's argument that the public has acquired a right to use Depot and Dobbs Streets persuades us that certification is appropriate.

Whether or not Marietta is entitled to relief in this action turns on whether Dobbs and Depot Streets are "public roads" under Georgia law. Counts I and II, which seek a declaration that the disputed streets have been dedicated to public use, raise this question directly. Count III, for nuisance, presents the issue because blocking a road is an abatable nuisance only when the road is public. *See Savannah, Fla. & W. Ry. Co. v. Gill*, 45 S.E. 623, 625 (Ga. 1903); *Henderson v. Ezzard*, 44 S.E.2d 397, 399 (Ga. Ct. App. 1947). The Georgia statutory claims in Marietta's other counts likewise rest on whether the streets are public roads: §§ 32-6-190 and 32-6-191 impose a maintenance duty on railroads only where the "track or tracks cross a public road." O.C.G.A. § 32-6-190. Similarly, § 46-8-103 prohibits railroads only from appropriating "*public* highways." O.C.G.A. § 46-8-103 (emphasis added).

Whether Dobbs and Depot Streets could have come under Marietta's control is not a settled question under Georgia law with our present undisputed facts. Marietta concedes that it has no documentary proof of dedication of Dobbs and Depot

16

Streets to public use, such as a deed.[7]   If Dobbs and Depot Streets have become

public, and thus under Marietta's control pursuant to Marietta's charter, it is by

longstanding public use.  It is there that Georgia law is unclear.

CSX argues that no amount of public use could ever have made the streets

public because in Georgia no prescriptive easement may be obtained against the State,

which owns the W&A railroad.  CSX's best support for this argument is a telegraphic

1881 Georgia Supreme Court opinion that, among its three paragraphs stating rules,

announces that

> [n]o prescription runs against the state; and this is true of the state's title
> to the Western and Atlantic railroad as well as the balance of the public
> domain, and it does not matter whether the road was for the time being
> in the hands of the state's own officers, or of her tenants or lessees.

*Glaze v. Western & A.R.R.*, 67 Ga. 761, 761 (Ga. 1881).  This is obviously strong

authority in CSX's favor, but it does not completely resolve the question because of

obliquely contrary cases that followed.

First, we can infer from *Glaze*'s other two paragraphs that the plaintiff there

was seeking to assert a private right to cross the W&A at a certain point.  The issue

was thus not presented whether the *public* may, after a period of undisturbed use of

a passageway, come to hold some right to cross the W&A.  And the distinction may

matter.  Georgia explains the development of a public access right in part by an

---

[7]       Marietta does point to its charter, which gives it control over public roads within its corporate limits, but the charter argument of course begs the question whether Dobbs and Depot Streets are in fact public.

"implied dedication" theory: after a period of years, we presume an antecedent grant to the public of a right of access. *See McCoy v. Central Ry.*, 62 S.E. 297, 298 (Ga. 1908); *see also Chandler v. Robinson*, 506 S.E.2d 121, 122-23 (Ga. 1998) (stating elements of implied dedication to public use); *see generally Lines v. Georgia*, 264 S.E.2d 891, 895-96 (Ga. 1980). This theory is distinguished from that of prescription, which is that by not expelling the public the property owner has lost the right to exclude by a species of laches. *See McCoy*, 62 S.E. at 298. In Georgia, prescription may not run against government landholders, such as the State or municipalities. *See Grand Lodge, Indep. Order of Odd Fellows v. City of Thomasville*, 172 S.E.2d 612, 615-16 (Ga. 1970). But that leaves open the possibility that the State may be presumed to have dedicated a public passage.

Two cases from earlier in this century concerning the W&A imply that this could indeed have happened here. The first case arose after a train operated by the Louisville & Nashville Railroad Company, CSX's predecessor lessee, ran over a man in Cobb County. Without comment on the sovereign ownership of the railway, the court concluded that the testimony in the case was sufficient to show that the road in question had become public by extended public use; thus, the railroad had a duty to observe Georgia's "blowpost statute," which required trains to sound a whistle 400 yards before a public road. *See Louisville & N.R. Co. v. Hames*, 68 S.E. 805, 806 (Ga. 1910). Similarly, the second action arose from a train accident in which a train on the

W&A failed to observe the blowpost statute, and the issue again presented itself whether the plaintiff's decedent was crossing at a public road. As in our case, there was no evidence of express dedication, and the railroad argued that only an act of the General Assembly could make the road public because "prescription cannot run against the state." *Western & A.R.R. v. Gray*, 157 S.E. 482, 488 (Ga. 1931). The Georgia Supreme Court rejected this argument by relying on still-extant statutes that put the W&A on par with other railroads before the law.[8] The court syllabized its holding thus: "This legislation is of itself a dedication of either a public road or a private way over any portion of the right of way of the Western & Atlantic Railroad which may be shown by evidence to have been accepted for use as a public road . . . ." *Id.* at 482. These cases cast doubt on the 1881 opinion in *Graves* and on CSX's argument against prescription.

---

[8]    The two statutes provide:
The state occupies the same relation to the railroad, as owner, that any company or corporation does to its railroad; and the obligations of the state to the public concerning the railroad, and of the public to the railroad, are the same as govern the other railroads of this state, so far as is consistent with the sovereign attributes of this state and the laws of force for its conduct.
O.C.G.A. § 50-16-101.
All the public road laws and penal laws touching the railroads of this state, whether to obligate or protect, apply to the state railroad unless specially excepted or some other provision is prescribed in lieu of some one or more thereof.
O.C.G.A. § 50-16-102.

This case, which has important policy implications, thus turns on a question of unsettled Georgia law. We therefore respectfully certify the following question to the Supreme Court of Georgia:

> Can the public acquire a right against the State of Georgia, and hence against its lessee CSX, to use the crossings at Depot and Dobbs Streets, such that the streets may not be closed without Marietta's consent?

We of course do not intend our phrasing of the question to restrict the Georgia Supreme Court's consideration of any other state-law problems posed by this case, or to dictate the form of the analysis or response. To assist the court in its consideration of the case, the entire record and the briefs of the parties and amici curiae will accompany this certification.

## III. Conclusion

For the foregoing reasons, we conclude that Georgia's absence does not prevent this action from proceeding, and that the merits turn on an unsettled question of Georgia law. We therefore certify a question to the Supreme Court of Georgia.

QUESTION CERTIFIED.