### A02A0031. PITTS v. CITY OF ROME et al.
(568 SE2d 167)

RUFFIN, Judge.

On October 16, 1997, Major Oscar Vernon Pitts suffered a stroke at his job with the City of Rome Police Department. He subsequently filed a workers' compensation claim against the City, asserting that work-related stress contributed to his stroke. The City contested coverage. On February 12, 1999, Major Pitts died from complications relating to the stroke, and his widow, Sue Pitts, pursued the workers' compensation claim, seeking total disability payments until the date of his death, as well as death benefits.[1]

Following a hearing, the administrative law judge denied the requested benefits. The Appellate Division of the Workers' Compensation Board adopted the ALJ's findings, and the superior court affirmed that decision. We granted Sue Pitts' application for discretionary appeal, and for reasons that follow, we affirm.[2]

1. In reviewing a decision of the State Board of Workers' Compensation, we construe the evidence

> in a light most favorable to the party prevailing before the board, and every reasonable factual inference and presumption of validity of award should be indulged in by the reviewing court. Neither the superior court nor this court has any authority to substitute itself as a fact-finding body in lieu of the board; an appellate body is bound by the "any evidence" standard of review, and is not authorized to substitute its judgment as to weight and credibility of witnesses.[3]

Viewed in this manner, the record shows that Major Pitts worked for the Rome Police Department for almost 31 years before

---

[1] See OCGA §§ 34-9-261; 34-9-265.

[2] We note that the brief submitted by Mrs. Pitts' attorney violates Court of Appeals Rule 27 (c) (1). Although the brief raises three enumerations of error, it lumps together the arguments into one long section, without any indication as to how the argument relates to the various enumerations. Furthermore, the brief does not comport with Rule 23 (e), regarding page length, and it contains no adequate citations to the appellate record, in violation of Rule 27 (a) (1) and (c) (3) (i). This utter failure to comply with the rules has made our review of this appeal extremely difficult.

[3] (Punctuation omitted.) *Sutton v. B & L Express,* 215 Ga. App. 394, 395 (1) (450 SE2d 859) (1994).

his stroke. On October 16, 1997, the day of his stroke, he held the title of Major in charge of the department's technical service bureau. In that position, Major Pitts had various responsibilities, including overseeing the training center, coordinating the department's fleet vehicles, issuing uniforms and other equipment, and generally taking care of technical services. Major Pitts also served as a bomb technician and hostage negotiator. Between February 1997 and October 16, 1997, however, his job duties focused primarily on supervising construction of a firing range and a new public safety building.

Several witnesses testified that problems with these construction projects caused Major Pitts some frustration. Yet, despite the problems, Pitts enjoyed supervising the projects. According to these witnesses, the primary stressor in Pitts' life during the months preceding the stroke involved his son's conviction for drug trafficking. Pitts believed that the arresting officers had tampered with the evidence and that the ten-year sentence his son received was too harsh. He also blamed his son's arrest and the sentence on his position with the Rome Police Department.

Mrs. Pitts testified that, for several months before his stroke, her husband had not felt well, was often tired, and increased his smoking habit from one and one-half packs of cigarettes per day to two or more packs daily. He also had a history of medical problems, including heart attacks in 1982 and 1983, heart by-pass surgery, congestive heart failure, a ventricular aneurysm, high blood pressure, high cholesterol, and high triglycerides. Dr. Joseph Biusco, the internist who treated Major Pitts over the ten years preceding the stroke, prescribed numerous medications for him, including Coumadin, a blood thinner given to prevent blood clots that can cause a stroke. At some point during the two weeks before the stroke, Pitts failed to take his Coumadin for a one-week period.

Medical evidence showed that Major Pitts' stroke resulted from a cardiac embolism — a blood clot from his heart that traveled to his brain. Dr. Raymond Capps, the neurologist who treated Pitts following the stroke, testified that stroke risk factors "include advancing age, high blood pressure, heart disease, diabetes, smoking, and . . . a genetic history as well as a previous history of vascular disease." Dr. Capps agreed that Pitts had several risk factors at the time of his stroke. He further testified, however, that Major Pitts' " 'massive stroke[ ] was exaggerated by his job as a police captain [sic] with extreme stress and fatigue from this position. His blood pressure and heart condition were also worsened by these work-related factors. In all, Mr. Pitts was at risk for major cardiovascular events given his high stress occupation.' "

The City presented medical evidence refuting Dr. Capps' conclusion. According to the City's expert, Dr. Michael Ware, it is impossible

to state that job stress contributed to Major Pitts' stroke. He testified that, even assuming Major Pitts suffered from work-related stress, that stress could not be tied to his stroke, especially given that Pitts "had missed about a week or so of his blood thinner." In Dr. Ware's view, any conclusion that job stress — or any particular stress — contributed to the stroke would be speculative. Dr. Biusco also testified that, although stress can contribute to a stroke, he could not say whether stress had anything to do with Major Pitts' stroke.

As defined by the Workers' Compensation Act, the term "injury" does not include

> heart disease, heart attack, the failure or occlusion of any of the coronary blood vessels, stroke, or thrombosis unless it is shown by a preponderance of competent and credible evidence, which shall include medical evidence, that any of such conditions were attributable to the performance of the usual work of employment.[4]

The ALJ concluded that Major Pitts was under stress at the time of his stroke. But, after reviewing the evidence, including the testimony of all three doctors, the ALJ determined that Mrs. Pitts showed "only a *possibility* that this stress contributed to the onset of the stroke and, thus, to the eventual death."[5] Finding that Mrs. Pitts did not sufficiently prove her claim, the ALJ denied the requested benefits.[6] The appellate division adopted the ALJ's conclusions, and the superior court affirmed that decision.

We find no error. As our Supreme Court has recognized, in "heart attack" cases, "it is often difficult for the trier of fact to find the line between a noncompensable heart injury that is a symptom of an existing disease merely manifested during job exertion, and a compensable heart injury to which the job exertion was a contributing precipitating factor."[7] Although this case involves a cardiac embolism, rather than a heart attack, we find that this same difficult line must be drawn here. And once the trier of fact locates and draws that line, we are required to affirm if any evidence supports the factfinder's determination.[8]

The evidence linking stress to Major Pitts' stroke was conflicting.

---

[4] OCGA § 34-9-1 (4).

[5] (Emphasis supplied.)

[6] See *AFLAC, Inc. v. Hardy*, 250 Ga. App. 570, 572 (552 SE2d 505) (2001) (mere possibility that job stress was a factor in causing heart attack is generally insufficient to sustain a claimant's burden of proof in a workers' compensation case).

[7] *Guye v. Home Indem. Co.*, 241 Ga. 213, 215 (244 SE2d 864) (1978).

[8] See id. at 218; *Phillips Correctional Institute v. Yarbrough*, 248 Ga. App. 693, 695 (548 SE2d 424) (2001).

Dr. Capps cited work-related stress as a contributing factor. Dr. Ware, however, found no basis for such a causal link and testified that tying stress to the stroke would be mere speculation. Dr. Biusco also refused to draw a causal connection in this case. The testimony from Dr. Ware and Dr. Biusco, as well as evidence that Major Pitts' medical history placed him at risk for a stroke, supported the conclusion that stress — whether job-related or otherwise — did not contribute to his condition. Although Mrs. Pitts presented competing medical testimony, the factfinder resolved the evidentiary conflict against her, as it was entitled to do,[9] and found that any effort to tie her husband's stroke to stress fell within the realm of possibilities and speculation.

We are bound in this case by the "any evidence" standard. Despite the dissent's arguments, the evidence supported the factfinder's determination that Mrs. Pitts failed to prove by a preponderance of credible evidence that Major Pitts' stroke was "attributable to the performance of the usual work of employment."[10] Accordingly, the superior court did not err in affirming the denial of workers' compensation benefits.[11]

2. Mrs. Pitts also challenges the ALJ's *alternative* ruling that, even if some type of stress contributed to the stroke, her claim would not be compensable because the primary stress Major Pitts experienced involved his son and was not job-related.[12] The dissent similarly finds error in the ALJ's conclusion that work duties must be the primary cause of stress contributing to the injury. Given our decision in Division 1, however, we need not consider whether the ALJ erred in its alternative ground for denying benefits.[13]

*Judgment affirmed. Pope, P. J., Andrews, P. J., Johnson, P. J., and Mikell, J., concur. Barnes and Phipps, JJ., dissent.*

BARNES, Judge, dissenting.

In my opinion, the administrative law judge applied an incorrect standard of review in his order denying benefits, and therefore I respectfully dissent from the majority opinion.

---

[9] See *Henry Gen. Hosp. v. Stephens,* 189 Ga. App. 619, 620-621 (2) (376 SE2d 705) (1988).

[10] OCGA § 34-9-1 (4).

[11] See *Yarbrough,* supra at 695-696; *Bibb County v. Higgins,* 241 Ga. App. 161, 162-163 (1) (526 SE2d 379) (1999); *Sutton,* supra at 396 (2) (in determining whether job caused or aggravated claimant's heart disease, "the board would be authorized to consider whether [the claimant's] existing risk factors alone caused his heart disease, whether any of those risk factors were caused by his employment, or whether any job-related conditions aggravated those risk factors to cause the heart disease").

[12] Mrs. Pitts contends that the stress Major Pitts experienced about his son was job-related because he believed his job somehow exacerbated the son's situation.

[13] See *Southmark Corp. v. Trotter, Smith & Jacobs,* 212 Ga. App. 454, 457 (442 SE2d 265) (1994).

The ALJ stated in his opinion that the evidence showed only a possibility that the decedent's job stress contributed to his stroke and resulting death, instead of a probability that it did so. The ALJ also held that such a claim is compensable only if the evidence demonstrates that (1) stress contributed to the onset of the injury; (2) the stress was attributable in part to work-related duties; and (3) the duties were the primary, rather than a secondary, contributing cause of the stress.

Regarding the ALJ's conclusions about the amount of evidence presented, the issue is not whether the evidence showed a possibility versus a probability that job stress contributed to the decedent's stroke. Rather, the issue is whether a preponderance of evidence shows that it was "attributable to the performance of the usual work of employment." OCGA § 34-9-1 (4). The facts in this case differ from those in *AFLAC, Inc. v. Hardy*, 250 Ga. App. 570 (552 SE2d 505) (2001), in which the claimant presented no medical evidence at all that her stressful job contributed to her underlying heart disease. A physician's report in that case stated only that a stressful work environment can play a role in exacerbating the symptoms of the disease, but could not be clearly implicated for that claimant. Id.

In this case, by contrast, the treating neurologist testified that

> [h]is condition, a massive stroke, was exaggerated by his job as a police captain [sic] with the extreme stress and fatigue from this position. His blood pressure and heart condition were also worsened by these work related factors. In all, Mr. Pitts was at risk for major cardiovascular events given his high stress occupation. In addition, his recovery would also be compromised by this degree of physical and emotional load.

While a physician who reviewed the decedent's records, but never examined him, testified that it was impossible to state that job stress contributed to the stroke, he also testified that one can almost never say stress directly causes a stroke. He further testified that, while stress would not directly cause the embolism that led to the decedent's stroke, it could affect factors that lead to the formation of an embolism.

As to the ALJ's conclusion that work stress must be the primary cause of the stroke, we have held to the contrary that "work need be only a *contributing* factor to a heart injury [or stroke] in order for that injury to be compensable." (Emphasis supplied.) *Phillips Correctional Institute v. Yarbrough*, 248 Ga. App. 693, 695 (548 SE2d 424) (2001). The ALJ's statement in this case that work duties must be the primary cause of the stress that contributed to the injury is

clearly incorrect, and I would reverse the superior court's decision affirming the board, which affirmed the ALJ's denial of benefits.

I am authorized to state that Judge Phipps joins in this dissent.

DECIDED JULY 2, 2002.

*Mundy & Gammage, Miles L. Gammage,* for appellant.
*Brinson, Askew, Berry, Seigler, Richardson & Davis, Kristy L. Cordle,* for appellees.