A03A1043. ATC HEALTHCARE SERVICE, INC. et al. v. ADAMS.
(589 SE2d 346)

RUFFIN, Presiding Judge.

The State Board of Workers' Compensation ordered ATC Healthcare Service, Inc. ("ATC") to pay workers' compensation benefits to Rita Adams. Both the appellate division and the superior court affirmed the award. We granted ATC's application for discretionary review, and for reasons that follow, we reverse.

In reviewing a decision of the State Board of Workers' Compensation, we construe the evidence and all reasonable factual inferences in favor of the party prevailing before the board.[1] We will affirm the board's decision if any evidence supports it.[2]

So viewed, the record shows that ATC is a staffing agency that provides nurses to hospitals, including the Augusta State Medical Prison. In July 2000, ATC hired Adams, a registered nurse, to fill nursing positions on an "as needed" basis. Shortly thereafter, ATC sent Adams to the prison for a three-day training class conducted by Adam Baswell, a Department of Corrections employee.

On the first day of the course, Adams arrived at the prison and attended the morning session. At approximately 11:30 a.m., Baswell released the class for a lunch break, instructing the attendees to return at 1:00 p.m. The prison did not have an available lunch facility, so Adams and several classmates drove to a nearby Cracker Barrel for lunch. While in the restaurant, Adams slipped and fell, injuring her right knee. Two days later, she underwent knee surgery. Three weeks after the surgery, Adams returned to work. Although ATC had no available positions to offer her, she secured employment in a hospital emergency room.

Adams filed a workers' compensation claim against ATC, seeking temporary total disability benefits for the three-week period between her injury and her return to work as an emergency room nurse. She also requested medical benefits and attorney fees. ATC disputed the claim, asserting that Adams' injury did not arise out of and in the course of her employment. In particular, ATC argued that Adams was on a regularly scheduled lunch break at the time she fell, precluding her claim.

---

[1] See *Pitts v. City of Rome*, 256 Ga. App. 278 (1) (568 SE2d 167) (2002).
[2] See id.

The administrative law judge ("ALJ") rejected that argument, finding that the lunch break was not regularly scheduled and that her injury arose out of and in the course of her employment. It thus awarded Adams temporary total disability benefits for the requested period, medical benefits, and attorney fees. The appellate division and the superior court affirmed.

To fall within the Workers' Compensation Act, an injury must arise out of and in the course of employment.[3] And we have consistently held that

> where a scheduled rest break or lunch break is provided to employees during which the employee is free to use the time as he chooses, making it personal to him, an injury occurring during the break period arises out of an individual pursuit and not out of his employment and is not compensable.[4]

The evidence shows that Adams' injury occurred during a scheduled lunch break.[5] Baswell, who conducts the three-day training course every two weeks, testified that the class has an agenda setting forth the topics covered before and after lunch each day. He further testified that the training class takes a lunch break every day "[a]pproximately at the same point" and that "at lunch time [the class goes] to lunch[,] no matter what." According to Baswell, the class usually adjourns for lunch at 12:00 p.m. and returns at 1:00 p.m., "but sometimes if the class [does not] have questions or things move a little bit faster, [the class is released] at 11:30 [a.m.] or so." Furthermore, on the first day of training, he generally begins the lunch period at 11:30 a.m. to give the participants extra time to find a place to eat.

Baswell acknowledged that, if something in class causes the discussion to extend into the break, the lunch period might be cut short. Typically, however, Baswell covers the required topics before the

---

[3] See OCGA § 34-9-1 (4); *Blair v. Ga. Baptist &c. Ministries*, 189 Ga. App. 579, 580 (1) (377 SE2d 21) (1988).

[4] *Edwards v. Liberty Mut. Ins. Co.*, 130 Ga. App. 23, 24 (1) (202 SE2d 208) (1973); see also *Rockwell v. Lockheed Martin Corp.*, 248 Ga. App. 73 (545 SE2d 121) (2001) ("Generally, where an employee is on a scheduled break and is not conducting her employer's business, the Workers' Compensation Act does not apply.").

[5] Although we need not address the issue here, it is unclear whether an *unscheduled* lunch break taken off the employer's premises, during which the employee is free of work obligations, arises out of the course of employment. See *Rampley v. Travelers Ins. Co.*, 143 Ga. App. 612, 614 (1) (239 SE2d 183) (1977) (holding that "once a claimant has introduced evidence establishing that the accident or injury occurred *on the employer's premises* during the regularly scheduled work day, even though the claimant was on break when it happened, it falls on the employer's shoulders to introduce evidence to show that the break was a scheduled one during which the claimant was not subject to the employer's demands or control") (emphasis supplied).

planned lunch period. And the record shows that, on the day of Adams' injury, the class commenced its lunch break at the normal time. Baswell further testified that he neither requires the trainees to seek lunch at a particular place nor conducts training activity during the break. He simply releases them for lunch and tells them what time to return.

Adams did not recall receiving a training schedule when she arrived for the course, but she understood that the lunch hour would last from 12:00 p.m. until 1:00 p.m. She testified, however, that Baswell released the class at 11:30 a.m. because they finished the morning training early. Adams admitted that she could use her lunch break in any way she pleased and that neither ATC nor the prison controlled what she did with that time. The evidence further shows that ATC did not compensate Adams for the lunch period.

Based on this testimony, the ALJ concluded that Adams' lunch break was not regularly scheduled because "the orientation schedule each day . . . determine[d] when the lunch break would occur." We find that the ALJ construed the lunch break rule too narrowly. The training program adjourns for lunch at "around the same time every day," after the class covers specified topics. And although the number of questions asked during class might alter that schedule to some extent, we cannot agree that these alterations render the lunch break "unscheduled."

We recognize that a lunch break is not scheduled when its timing each day depends entirely on the employee's changing workload.[6] The evidence shows, however, that Baswell's training agenda anticipated a lunch break at a particular time. Baswell further testified: "[I]f we don't cover everything in the morning and if it's noon and we still haven't covered everything or there [are] questions about something, we'll still go to lunch anyway." Finally, the record contains no evidence that the lunch break ever ended at a time other than 1:00 p.m. Under these circumstances, it strains logic to view the break as anything but scheduled.

As the dissent notes, we must liberally construe the Workers' Compensation Act to bring employers and employees within its provisions.[7] Nevertheless, the Act only covers injuries arising out of and in the course of employment.[8] And the record demonstrates that Adams slipped and fell at a restaurant while on a scheduled lunch break. It further shows that she was free to use her break in any manner she wished and that ATC exercised no control over her activ-

---

[6] See *Miles v. Brown Transport Corp.*, 163 Ga. App. 563, 564 (294 SE2d 734) (1982); *Rampley*, supra at 613.

[7] See OCGA § 34-9-23.

[8] See *Blair*, supra.

ities during that period.[9] Accordingly, her injury arose "out of [her] individual pursuit and not out of [her] employment."[10] Because no evidence supports a contrary conclusion, we must reverse.

*Judgment reversed. Smith, C. J., Andrews, P. J., and Johnson, P. J., concur. Barnes, Miller and Adams, JJ., dissent.*

BARNES, Judge, dissenting.

I concur fully in Judge Miller's dissent. I write separately to emphasize that our job is not to review and reweigh the evidence, but only to decide whether "any evidence" supports the decision of the workers' compensation board. "A finding of fact by an administrative law judge or the State Board of Workmen's Compensation, when supported by any evidence, is conclusive and binding." (Citation, punctuation and emphasis omitted.) *Roy v. Norman*, 261 Ga. 303, 305 (404 SE2d 117) (1991).

> The ALJ is vested with the authority to make findings of fact in workers' compensation claims. The appellate division of the workers' compensation board must accept the ALJ's findings where there is a preponderance of competent and credible evidence to support the decision. The appellate division accepted the ALJ's finding. . . . This decision cannot be disturbed as long as there is any evidence to support it, because neither the superior court nor the appellate court has the power to find facts.

(Citations and punctuation omitted.) *Hallisey v. Fort Howard Paper Co.*, 268 Ga. 57, 58-59 (1) (484 SE2d 653) (1997). In this case, evidence supports the board's decision, and therefore we should affirm it.

The board found as a fact that "the evidence is sufficient to show that the employee's lunch break was not regularly scheduled because the orientation schedule each day would determine when the lunch break would occur," and concluded as a matter of law that the employer's "lunch break defense" did not apply. The appellate division of the State Board of Workers' Compensation agreed, ruling that "[a]fter a review of the record as a whole, we find the employer/

---

[9] Cf. *Swanson v. Lockheed Aircraft Corp.*, 181 Ga. App. 876, 878 (1) (a) (354 SE2d 204) (1987) ("Clearly, even if the employee is on a scheduled break and even if the employee is free to use the break time as he pleases, if the employee is in fact engaged in employment-related activities, the injury is compensable under the Act.").

[10] *Wilkie v. Travelers Ins. Co.*, 124 Ga. App. 714, 715 (185 SE2d 783) (1971). See also *Aetna Cas. &c. Co. v. Honea*, 71 Ga. App. 569, 572-573 (31 SE2d 421) (1944) (injury that occurred during claimant's 45-minute lunch period, which she could take at any time between 12:00 p.m. and 3:00 p.m., did not arise out of employment).

insurer have not proven by a preponderance of competent and credible evidence in the record that the lunch break defense is applicable and bars the employee's claim." The appellate division continued, "We find, as the administrative law judge correctly found, that the employee's lunch break was not regularly scheduled because the employee's work schedule/orientation dictated when the employee would be entitled to lunch."

The majority, however, concludes that the evidence shows that Adams' injury occurred during a scheduled lunch break. Under the majority's reasoning, the fact that the new employees took a lunch break every day around lunchtime is sufficient to render it "scheduled." That reasoning ignores the training director's testimony that the sessions did not break at a specific time, but whenever the new employees finished with their questions, much as the lunchtime of the employee in *Miles v. Brown Transport Corp.*, 163 Ga. App. 563, 564 (294 SE2d 734) (1982), was not regularly scheduled because she ate when her workload permitted her to eat. Because our duty is not to reweigh the evidence and draw our own conclusions from it, but to determine whether any evidence supports the board's decision, I must respectfully dissent from the majority opinion.

MILLER, Judge, dissenting.

I respectfully dissent. Since some evidence indicated that the lunch break was not scheduled, the Board's factual finding to that effect cannot be reversed and the superior court's affirmance on that basis was correct. Accordingly, the Workers' Compensation Act applied to cover the injury.

The applicable law is set forth in *Miles v. Brown Transport Corp.*, 163 Ga. App. 563, 564 (294 SE2d 734) (1982):

> An injury to an employee occurring during working hours and on the employer's premises ordinarily and presumptively will be considered as arising out of and in the course of employment and as such, the employee's sole course of action is against the employer under the provisions of the Workers' Compensation Act. An exception to coverage, however, has been carved out for injuries occurring during a regularly scheduled lunch break or rest break and at a time claimant is free to act as she chooses. Where these two facts concurrently exist, i.e., "regularly scheduled" and "freedom of action," the injury does not arise out of and is not in the course of employment even though within working hours and on the employer's premises. Freedom of action alone is not enough to remove the mantle of workers' compensation from the employee nor absolve the employer from liability

under the Workers' Compensation Act. *The employer must show both that the injury occurred during a scheduled break and the employee has full control of personal actions during the break time.* In this case, . . . Brown produced evidence through its employees, including Ms. Miles, that *the precise time* she took her lunch break was dictated by the current status of the workload. Thus, Ms. Miles'[s] lunch break was not a "scheduled" one.

(Citations omitted; emphasis supplied.) Id.; accord *Blair v. Ga. Baptist &c. Ministries*, 189 Ga. App. 579, 582 (2) (377 SE2d 21) (1988).

Here some evidence showed that the precise time of the lunch break during the training course (regardless of what day in the course it was) was dictated by the status of the training. The training director testified:

Q. And do you take a lunch break at every training session?
A. Every day. Yes, we do.
Q. And do you take it at the same point during each training session?
A. Approximately at the same point. Usually we try to take them between 12:00 and 1:00, but sometimes if the class doesn't have questions or things move a little bit faster, sometimes we'll be out at 11:30 or so. But, yes, around the same time every day.
Q. Do you always take a lunch break after you discuss specific topics? Is there a specific breaking point for you to go to lunch?
A. After each topic we have breaks and then usually we take a break at a certain time, you know, depending — even sometimes some of the classes will go faster than others so if we don't cover everything in the morning and if it's noon and we still haven't covered everything or there is questions about something, we'll still go to lunch anyway. So it's not specifically after every class. It's more of a — at lunch time we go to lunch no matter what.
Q. At that first day of orientation generally when do you go to lunch? After — .
A. Usually on the first day I let them out about 11:30 because on the first day they have no idea what to expect and we — the prison no longer has a cafeteria inside so if they want to eat lunch they have to leave the facility somewhere. So I usually let them out about 11:30 which gives them an extra half hour so they can — on the first day so

that they can know what to expect or if they have to go travel somewhere to get lunch.

On cross-examination, however, he admitted:

Q. So there's no real set — I mean it's not so rigid as a specifically set lunch break? I mean there is a — as you've said, it's some — between 11:30 and twelve o'clock? It can vary in between those times; is that correct?
A. Yes, sir. I mean we — we do definitely take a lunch break, but just because of the setting or the style of the class, it being a new employee orientation, sometimes there's a lot of questions in the prison.
Q. Okay.
A. So depending on the class, it may not get out at a specific time.

The training director went on to admit that if there were questions or a topic which was not covered, the questions would be answered or the topic covered before going to lunch, which suggested that the lunch or break period would be cut short.

Although some evidence supported the majority's determination that the lunch break was scheduled, some evidence also supported the Board's factual finding that the lunch break here was not scheduled at a precise time but depended on the circumstances, and that therefore the "scheduled lunch break" exception to the Workers' Compensation Act did not apply. We must remember that the law leans toward *including* employees and employers within the coverage of the Workers' Compensation Act. OCGA § 34-9-23 (the Workers' Compensation Act "shall be liberally construed . . . for the purpose of bringing employers and employees within the provisions of this chapter and to provide protection for both"). Inasmuch as the Court of Appeals and the superior court are required to uphold the Board's findings if there is any evidence to support them, the superior court here did not err in affirming the Board's award. See *Johnson v. Publix Supermarkets*, 256 Ga. App. 540 (568 SE2d 827) (2002).

For these reasons, I would affirm the superior court's judgment which affirmed the Board's award.

I am authorized to state that Judge Barnes and Judge Adams join in this dissent.

DECIDED OCTOBER 27, 2003

*Carlock, Copeland, Semler & Stair, Christopher A. Whitlock, Kelly M. Clark,* for appellants.
*Larry N. Hollington,* for appellee.