Tuesday                    14th
February, 2006.

Tarun Batra,                                                                 Appellant,

 against                    Record No. 0047-05-4
                           Circuit Court No. CH21850

Julia B. Batra,                                                             Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Frank, Humphreys, Clements,
Felton, McClanahan and Haley

Fred M. Rejali for appellant.

Monica S. Call (Edward J. Fuhr; Terence J. Rasmussen; Hunton &
Williams LLP, on brief), for appellee.


For the reasons given in the dissenting opinion to Batra v. Batra, 05 Va. App. UNP#0047054

(2005), we reverse the trial judge's denial of the husband's request for attorney's fees expended in

connection with the wife's challenge to the parties' property settlement agreement.  In accordance with

the terms of the agreement, the attorney's fees sought and awarded by this ruling pertain solely to

services expended by the husband's attorney in connection with the parties' property settlement

agreement, not child custody and visitation issues.  The husband represented at trial and concedes on

appeal that, although his request includes attorney's fees associated with his preparation for the October

27, 2004 hearing, he is asserting no claim for attorney's fees for the October 27, 2004 hearing itself

because the wife withdrew her objections to the property settlement at that hearing and only proceeded

on the custody and visitation issues.

Accordingly, it is ordered that the June 21, 2005 mandate is vacated and we remand this case to

the trial judge to fix the amount of the husband's reasonable attorney's fees for those services.

In addition, we award the husband his attorney's fees and costs for this appeal. We direct the trial judge on remand to fix the amount of the husband's reasonable attorney's fees for services incurred on this appeal. See Hughes v. Hughes, 173 Va. 293, 306, 4 S.E.2d 402, 407-08 (1939); Sanford v. Sanford, 19 Va. App. 241, 249-50, 450 S.E.2d 185, 190 (1994); Via v. Via, 14 Va. App. 868, 873, 419 S.E.2d 431, 434 (1992).

Judge Humphreys dissents for the reason stated in the panel majority opinion.

This order shall be certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

# *VIRGINIA:*

*In the Court of Appeals of Virginia on*   **Tuesday**   *the*  **23rd**  *day of*  **August, 2005**.

Tarun Batra,                                                                    Appellant,

 against          Record No. 0047-05-4
                  Circuit Court No. CH21850

Julia B. Batra,                                                              Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On July 5, 2005 came the appellant, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on June 21, 2005, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on June 21, 2005 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellant shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:    Judges Benton, Humphreys and Senior Judge Overton

TARUN BATRA

MEMORANDUM OPINION[*] BY
v.        Record No. 0047-05-4          JUDGE NELSON T. OVERTON
JUNE 21, 2005
JULIA B. BATRA

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Burke F. McCahill, Judge

(Fred M. Rejali, on brief), for appellant.  Appellant submitting on brief.

No brief for appellee.

Tarun Batra (husband) contends the trial court abused its discretion in refusing to award his attorney's fees and costs expended in the establishment of the validity and enforcement of the Financial Agreement reached between husband and Julia Batra (wife).  Husband also requests that this matter be remanded for the trial court to determine the amount of fees and costs to be awarded for this action on appeal.  Finding no error, we affirm the trial court's decision and deny husband's request for attorney's fees and costs incurred in this appeal.

Background

The parties were married on March 29, 1993.  On June 14, 2002, wife filed a bill of complaint seeking, among other things, a divorce based on grounds of cruelty and constructive desertion, spousal support, and equitable distribution of the parties' assets.  Husband filed an answer and cross-bill of complaint on June 24, 2002.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On August 28, 2004, after extensive discovery and negotiation, the parties reached the Financial Agreement, which divided their assets and debts. Both parties and their counsel signed the Financial Agreement, which contained the following language: "Parties agree this agreement may be incorporated into a Decree. In case either party has to resort to litigation to enforce this agreement the prevailing party shall receive their attorney's fees." The parties had also reached a Custody and Visitation Agreement, but had not agreed upon child support. The Custody and Visitation Agreement had been signed by the parties' counsel, but not husband and wife.

On September 1, 2004, the date scheduled for the trial of this matter, wife appeared in court and discharged her attorney. Wife told the trial judge that she felt she had signed the agreements under pressure and requested an extension of time to obtain new counsel. She contended that she did not understand the Financial Agreement and that "in the Financial Agreement there [were] some legitimate points that need to be discussed." She stated that she felt "there's some things in the Financial Agreement that need to be revisited as far as selling the airplane." The trial court, over husband's objection, continued the matter to October 1, 2004 for review to allow wife time to obtain new counsel. The trial court ordered that wife report to the trial court on October 1, 2004, regarding the attorney she had hired and that she "be in a position to report the status of this . . . [and] also have your position in writing in terms of what challenges you wish to make" to the Financial Agreement. The trial court indicated that it would decide on October 1, 2004 whether the case could be heard that day or whether a hearing would need to be scheduled.

On October 1, 2004, wife appeared before the trial court with her new counsel. The trial court instructed wife to file her objections to the agreements within fourteen days, and continued the matter to October 27, 2004 for a final hearing.

On October 15, 2004, wife filed a document with the trial court titled "Objections of Julia Batra to Equitable Distribution and Custody and Visitation Agreements." In that document, wife raised the following objections with respect to the "Purported Equitable Distribution Agreement":

> - Mooney M20C Airplane – fails to address what happens if Mr. Batra fails to refinance the airplane. Who will be responsible for the shortfall if the plane is sold for less than the amount of the outstanding note, which both parties signed?
>
> - Fails to address the $2,968 child support arrearage ordered to be deducted from Mr. Batra's equitable distribution portion. See this Court's order of December 16, 2002.
>
> - Personal property distribution remains in dispute – see the parties' respective inventories of personal property. Reassess distribution of personal property or remove disparaging references to diamond earrings given to Mrs. Batra by her mother in law.

At the October 27, 2004 hearing, wife indicated that the first and third objections regarding the airplane and the personal property distribution were "no longer issues at this point . . . ." She then informed the trial court that the only remaining issue to be resolved with respect to the Financial Agreement related to the $2,968 child support arrearage that the trial court had previously ordered be paid out of husband's portion of the equitable distribution award. Wife contended that when the parties entered into the Financial Agreement, they overlooked the trial court's December 2002 order regarding the deduction of the child support arrearage from husband's equitable distribution portion. The trial judge noted "I don't see any pleading in this file making any claim regarding fraud, unconscionability, or duress, or anything else that challenges the validity of the [Financial] [A]greement. I do understand that there are objections regarding the arrearage and child support." The trial judge also noted that visitation may be an issue. Wife's counsel acknowledged that wife had signed the Financial Agreement and that she was not challenging the validity of that agreement. The trial court then sustained husband's

- 3 -

objection to wife's testimony regarding her understanding about the $2,968 child support arrearage based on the parol evidence rule. Having found that wife made no challenge to the validity of the Financial Agreement, the trial court then proceeded to hear evidence and argument regarding unresolved issues related to the Custody and Visitation Agreement and child support. Thereafter, the trial court affirmed, ratified, and incorporated the Financial Agreement into the final decree. The trial court acknowledged "[a]s previously noted in my ruling, there really was no challenge to this [Financial] [A]greement. The Court found that, in this case, that this is an agreement between the parties and I do find this is a valid agreement . . . ." The trial court also affirmed, ratified, and incorporated the provisions of the Custody and Visitation Agreement into the final decree, with certain exceptions. The trial court also ordered husband to pay child support.

At the conclusion of the October 27, 2004 hearing, in ruling upon husband's request for an award of attorney's fees and costs related to the September 1, 2004 hearing and the October 1, 2004 hearing, the trial court stated as follows:

> I'm not going to make any award of attorney's fees on that issue. This was not really an action to enforce the [Financial] [A]greement. It had not yet been moved into evidence. When you moved it into evidence today it was not objected to. I received it into evidence. I sustained your objection on evidentiary ruling. The Court then affirmed, ratified, and incorporated it. I only gave her the additional time if she was going to make a challenge. She did not make a challenge to the [Financial] [A]greement.

On December 7, 2004, the trial court entered the final decree of divorce *a vinculo matrimonii* between the parties. That decree affirmed, ratified, and incorporated the Financial Agreement into the decree; affirmed, ratified, and incorporated the Custody and Visitation Agreement into the decree with certain exceptions; ordered husband to pay child support and

- 4 -

resolved certain other issues related to the parties' minor child; and denied husband's request for attorney's fees and costs.[1]

Analysis

Absent an agreement between the parties, the decision to award attorney's fees is left to the sound discretion of the trial court, and an award will be overturned on appeal only if the trial court abused its discretion. See Kane v. Szymczak, 41 Va. App. 365, 375, 589 S.E.2d 349, 354 (2003). However, Code § 20-109(C) provides that:

> In suits for divorce, annulment and separate maintenance, and in proceedings arising under subdivision A 3 or subsection L of § 16.1-241, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract. If such a stipulation or contract is filed after entry of a final decree and if any party so moves, the court shall modify its decree to conform to such stipulation or contract.

Thus, the courts "are not at liberty to ignore a contractual provision specifically included by the parties." Hering v. Hering, 33 Va. App. 368, 372, 533 S.E.2d 631, 633 (2000). We review the terms of the contract *de novo*. See Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002).

Husband argues that because the Financial Agreement provided for an award of attorney's fees and costs to the prevailing party in the event that party had to resort to litigation to enforce the

---

[1] We note that at the October 27, 2004 hearing, husband's counsel indicated that husband was not making a claim for attorney's fees and costs related to the October 27, 2004 hearing. However, husband's affidavit, made a part of the record on December 7, 2004, in support of his claim for attorney's fees and costs, included expenses related to his counsel's court appearances on September 1, 2004 and October 1, 2004, conferences between husband and his counsel on October 6, 2004 and October 25, 2004, a telephone conference between the parties' counsel on October 27, 2004, preparation of the affidavit, and an estimated time for the court appearance on October 27, 2004.

- 5 -

Financial Agreement, the trial court abused its discretion by finding that wife did not challenge the Financial Agreement and by refusing to award attorney's fees and costs to husband. We disagree.

Initially, we note that contrary to husband's contention on appeal, the language contained in the Financial Agreement did not provide for an award of attorney's fees in the event of litigation to establish the agreement's "validity." Rather, the express language of the Financial Agreement allowed for attorney's fees and costs only in the event of litigation to "enforce" the agreement.

Here, the record established that the September 1, 2004, October 1, 2004, and October 27, 2004 hearings were not litigation resorted to by husband to enforce the Financial Agreement. Rather, the September 1, 2004 hearing pertained to wife obtaining new counsel, not to litigation to enforce the Financial Agreement. The October 1, 2004 hearing pertained to wife identifying her new counsel and the trial court ordering wife to file any objections she had to the Financial Agreement within fourteen days. At the October 27, 2004 hearing, wife withdrew her October 15, 2004 written objections related to the airplane and personal property distribution, and conceded that she was not challenging the validity of the Financial Agreement. When she attempted to testify regarding her understanding of the treatment to be given the $2,968 child support arrearage in the Financial Agreement, the trial court sustained husband's objection to that testimony and did not allow wife to present evidence on that issue. Thus, husband was not required to resort to litigation to enforce the Financial Agreement on October 27, 2004. The trial court then ratified, affirmed, and incorporated the Financial Agreement into the decree. The remainder of the October 27, 2004 hearing involved issues related to custody, visitation, and child support.

Applying the terms of the parties' Financial Agreement to this case, we find that husband is responsible for his own attorney's fees and costs. The attorney's fees and costs requested by husband were not incurred by him due to having to resort to litigation to enforce the Financial

- 6 -

Agreement. Thus, because the trial court's denial of husband's request for an award of attorney's fees and costs was not contrary to the parties' binding contractual agreement, we find that the trial court did not err in refusing to award husband his attorney's fees and costs. The trial judge's order granted relief "according to the terms of [the] . . . contract signed by the parties." Blackburn v. Michael, 30 Va. App. 95, 100, 515 S.E.2d 780, 783 (1999).

Accordingly, we affirm the trial court's denial of husband's request for an award of attorney's fees and costs and deny husband's request for attorney's fees and costs incurred in this appeal.

Affirmed.

Benton, J., dissenting.

Prior to trial, the parties entered into two agreements, one of which recites that the "parties agree this agreement may be incorporated into a Decree" and further that "[i]n case either party has to resort to litigation to enforce this agreement the prevailing party shall receive their attorney's fees." The majority agrees that, notwithstanding the express provisions that the agreements may be incorporated into the divorce decree and that the prevailing party is entitled to attorney fees in litigation to enforce the agreements, the wife objected to the agreements and attempted to thwart their incorporation into the decree. Yet, the majority concludes that the husband's successful defense of the agreements and effort to have the agreements incorporated into the decree was not a resort to litigation to enforce the agreements. I disagree.

"It is well established that a property settlement agreement is a contract between the parties and that their rights and obligations are defined under it." Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000). Furthermore, property settlement agreements are statutorily accorded preference in divorce proceedings by virtue of Code § 20-109, which provides, in pertinent part, as follows:

> In suits for divorce, . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract. If such a stipulation or contract is filed after entry of a final decree and if any party so moves, the court shall modify its decree to conform to such stipulation or contract.

Code § 20-109(C).

Thus, when a property settlement agreement provides for the payment of attorney's fees under a defined set of circumstances, the trial judge must enforce the agreement. Sanford v. Sanford, 19 Va. App. 241, 249-50, 450 S.E.2d 185, 190 (1994); Lockhart v. Baxter, 12 Va. App.

- 8 -

600, 605, 405 S.E.2d 434, 437-38 (1991). "[W]e have never intimated that [Code § 20-109(C)] permits a trial judge to grant relief in derogation of the terms of the parties' agreement." Rutledge v. Rutledge, 45 Va. App. 56, 62, 608 S.E.2d 504, 507 (2005).

The trial judge's ruling, that Julia Batra did not contest the agreements she made with her husband, is plainly wrong. The record proves that the wife terminated her attorney after the August 28, 2004 agreements were signed. At the hearing at which the wife sought a continuance to obtain a new attorney, the attorney whom she terminated informed the judge that the parties had reached two agreements, one regarding the property and the other on custody and visitation, leaving only the issue of child support for the judge to decide. Her attorney also informed the judge that the wife, whom he represented during the negotiations, "feels that . . . she was tricked, coerced, or somehow signed the agreement without proper legal representation." The wife agreed with the attorney's assessment and told the judge she signed the agreements "under pressure without fully understanding" them, that the agreements "would require some changing in the wording," and that she has "difficulties living with such an agreement."

Granting a continuance to allow the wife to hire a new attorney and file objections to the agreement, the trial judge remarked as follows:

> I feel that under these circumstances, as difficult as it may be and as problematic as it may be for you, Mr. Batra, in terms of your suspicions in regard to her motivation or the lack of bona fides in terms of her presenting these issues, I feel it would be an abuse of discretion having just discharged her counsel to at least not have the opportunity to explore that opportunity. We need another attorney to determine whether or not there is any basis for her to mount these challenges.
>
> Obviously, that impacts you personally. It impacts everyone. It impacts the Court as well, because as I said, the Court doesn't like to necessarily continue cases. I think it burdens me to come down on these cases. I don't like to see situations, but if I were to do otherwise, then I would be in essence prejuding several things; first, that her motivation is less than pure, that it's simply to inflict pain upon you or cause delay or just dilatory behavior on her part,

and secondly; more importantly, I would be prejuding that this is a valid agreement and forcing her to litigate without counsel today the validity of this agreement. I think she needs to probably at least have that opportunity.

The wife hired a new attorney. Prior to the hearing from which this appeal arises, the wife's new attorney filed the following pleading:

OBJECTIONS OF JULIA BATRA
TO
EQUITABLE DISTRIBUTION
AND
CUSTODY AND VISITATION AGREEMENTS

Comes now Julia Batra, by counsel, and for her Objections to the alleged Agreements of August 28, 2004 states as follows:

1) PURPORTED EQUITABLE DISTRIBUTION AGREEMENT

- Mooney M20C Airplane - fails to address what happens if Mr. Batra fails to refinance the airplane. Who will be responsible for the shortfall if the plane is sold for less than the amount of the outstanding note, which both parties signed?

- Fails to address the $2,968 child support arrearage ordered to be deducted from Mr. Batra's equitable distribution portion. See this Court's order of December 16, 2002.

- Personal property distribution remains in dispute - see the parties' respective inventories of personal property. Reassess distribution of personal property or remove disparaging references to diamond earrings given to Mrs. Batra by her mother in law.

2) PURPORTED CUSTODY AND VISITATION AGREEMENT

- Not in substantial compliance with this Court's Order of May 18, 2004 in the following respects:

a) no change o[f] circumstances has occurred to merit overnight visitation on Sunday and Wednesday evenings, other than an attempt to reduce child support by forcing a shared custody support calculation;

b) language concerning "no corporal punishment and no massaging" of the child is omitted in this Order;

- 10 -

- Summer Vacation - one three week block for father, with prior notice. If he is in town, mother allowed one weekday evening for dinner with child

- Thanksgiving - acceptable as written

- Christmas - divided between the parties: end of school until Dec. 27 evening with one parent (mother this year), and from December 27 until the evening before school begins with father. This schedule to alternate each year.

- Spring Break - add provision that parent without custody that week will be allowed dinner with child one night if child and parent are in town.

- Child's Birthday, Parent's Birthdays - to be celebrated by each parent on the weekend closest to the birthday.

- Mother's Day and Father's Day - to be spend with the respective parent, regardless of whose it weekend it is.

3) CHILD SUPPORT

- Not addressed in the purported agreements and we request that it be decided at this time, including calculation of existing arrearages.

WHEREFORE, Julia Batra respectfully asks that the Court order that the parties incorporate its previous rulings into the Agreements, or schedule a hearing on the above issues.

Respectfully submitted,
Julia Batra, by counsel

Simply put, by filing a pleading that raised these multifarious objections to the agreements, the wife required the husband to resort to litigation to enforce the agreements. As the majority recognizes, these issues were specifically addressed by the attorneys, the judge, and the wife at the later evidentiary hearing. Indeed, the issues were litigated and resolved by intervention of the judge after the wife's new attorney informed the judge at the hearing that "the issues that are outstanding are the issues that we've raised in our pleading." The wife's new attorney also conceded, however, that she "prepared this pleading . . . without looking at without

seeing the September 1 [visitation] order." During extensive discussions between the judge and the attorneys, the following colloquy occurred:

> COURT: So that, notwithstanding, you listed three items. The only issue that really is a concern is this issue of arrearage. Is that correct?
>
> [WIFE'S ATTORNEY]: Of the arrearage that was to be paid out of Mr. Batra's portion of an ED award, yes.
>
> [HUSBAND'S ATTORNEY]: So, is my understanding correct that the issue about the Muni airplane and the division of personal properties are no longer issues at this point anymore?
>
> [WIFE'S ATTORNEY]: That's correct. What it really gets down to is that the parties ignored the Court's Order and, I may have inartfully drafted it, there's a February, I think that it's 2002 Order, that, December 2002, that the child support arrearage was to be paid out of Mr. Batra's portion of the equitable distribution, and that has not been addressed at all.
>
> [HUSBAND'S ATTORNEY]: Alright, I just want, and I don't mean to belabor the point, but we have come from a slew of problems with this agreement, the Property Settlement Agreement, to what was five or six problems with it in the last letter that we received on October 1st, to what was three problems with it, which we received on October 14th, to now only one issue that they want to address about that. Is that, I just want to make sure, and I'm prepared to address anyone of those three issues or one.

After a brief recess to allow the wife to confer with her attorney, the wife's attorney indicated the wife wanted the custody agreement amended.

> COURT: May I inquire then, is what you're saying is that, and I just want to be clear on this, that in this purported agreement that there is a custody visitation provision, is that correct?
>
> [WIFE'S ATTORNEY]: Yes sir.
>
> COURT: And that it is satisfactory with you and your client, except for that your client believes that there should be language in any Final Decree that addresses those two components?
>
> [WIFE'S ATTORNEY]: Yes sir.

- 12 -

COURT:  No corporal punishment and no massaging of the child?

[WIFE'S ATTORNEY]:  Yes sir.

The wife also challenged the genuiness of her first attorney's signature on the custody agreement.  Apparently, the wife's new attorney had not conferred with the wife's first attorney about this matter.  In any event, to address this concern, the husband's attorney called as a witness the wife's first attorney.  The wife's first attorney testified that the custody agreement contained his signature and that he signed the agreement in the presence of the wife, the husband, and the husband's attorney.  The wife's new attorney did not cross-examine the wife's former attorney.  The wife's new attorney did not pursue this issue further.

The wife's new attorney then continued to challenge the property settlement agreement and offered the wife as a witness to establish her intent in signing the property agreement.  The husband objected to the testimony citing the parol evidence rule.  In response the wife's attorney argued:

> [The document is not the final expression of her intent] under these circumstances where she has raised issues about the agreement and the Court has allowed her to raise her issues.  The one issue she has, I think she should be allowed to testify about the relevance.  The question to her is did she intend for this to be waived or not.  Did she understand what she was doing at the time she signed the agreement?

The trial judge sustained the husband's objection.

The trial judge then considered evidence concerning child support, an issue that both parties agree was to be decided by the trial judge per the parties' written agreement.  At the conclusion of the evidence, the trial judge affirmed, ratified, and incorporated into the final decree both the property agreement and the custody and visitation agreement.  The trial judge further ordered that the husband would not massage the child.

- 13 -

Unquestionably, the record establishes that the wife sought to overturn the parties' agreement and resorted to the trial process to do so. The husband was required to resort to litigation to defend and enforce the agreement. When, as here, the parties agreed to the award of attorney's fees to the prevailing party in litigation contesting the agreement, the trial judge erred in denying the husband's request for attorney fees because the judge was "not at liberty to ignore a contractual provision specifically included by the parties." Hering v. Hering, 33 Va. App. 368, 372, 533 S.E.2d 631, 633 (2000).

For these reasons, I would hold that the husband's defense of the agreements, by any measure, was "litigation to enforce this agreement" and that the trial judge erred in refusing to award attorney fees to the husband. I would reverse the decision and remand for imposition of a reasonable attorney fee to include services rendered on this appeal.