A08A1366. GLASS v. CITY OF ATLANTA et al.
(666 SE2d 406)

BLACKBURN, Presiding Judge.

Following his dismissal as a City of Atlanta police officer for excessive use of force, Stuart Glass appealed to the city's Civil Service Board (the "Board"), which conducted an evidentiary hearing and affirmed his termination. On writ of certiorari, the superior court affirmed the Board's decision. Glass appeals, challenging the sufficiency of the evidence supporting the Board's decision to affirm his dismissal. He further argues that the Board violated a city ordinance and his due process rights under the Georgia and United States Constitutions by failing to conduct a hearing within 60 days of the filing of his notice of appeal and by failing to conduct the entire

---

hearing on consecutive days. For the reasons set forth below, we affirm the Board's decision.

Viewed in a light most favorable to the Board, and with every presumption in favor of the Board's decision indulged, *City of Atlanta v. Harper*,[1] the record shows that late in the afternoon on January 30, 1992, Glass was on routine patrol when he received a radio call from one of his supervisors, requesting that he and some other officers investigate possible drug activity in front of a nearby public housing building. Glass met two other officers a few blocks from the reported address, and the three officers proceeded to the scene on foot. As the officers approached, they saw several young males sitting on a waist-high retaining wall, which separated the sidewalk from the front yard of the public housing unit. Glass noticed an open beer can on the wall next to one of the males, asked whose it was, and poured it out when no one responded. Glass then asked for and received consent to search the group for weapons. During that search, he discovered that one of the males, Eric Patterson, was carrying two driver's licenses. He then informed Patterson that he was under arrest for drinking in public and carrying two licenses. When Patterson stood up to try to explain why he had two licenses, Glass grabbed his face. As Patterson removed Glass's hand, Glass grabbed him by the throat, began choking him, and pushed him backward over the retaining wall. Glass continued choking Patterson until he and one of the other officers were able to handcuff him.

By this time, a hostile crowd had gathered, which caused the third officer to call for backup. Within a couple of minutes, three more officers arrived. Patterson and his brother, who was also arrested during the melee for throwing a bottle and threatening the officers, were placed in the back of a squad car, at which time Patterson began complaining that he was having trouble breathing. Fearing that Patterson's breathing difficulties were becoming worse, the officers transported him to the hospital where he was treated and later released. Following the incident, the officer who had assisted Glass in handcuffing Patterson reported to his supervisor that Glass had used excessive force during the arrest. In addition, Patterson filed a citizen complaint, claiming that Glass had used excessive force.

As a result of his altercation with Eric Patterson, Glass was charged by his supervisors with violating Rule 1.03 of the Atlanta Police Department Work Rules, which provides that employees must be truthful at all times, and Rule 2.50, which provides:

---

[1] *City of Atlanta v. Harper*, 276 Ga. App. 460, 461 (623 SE2d 553) (2005).

a. The unnecessary use of excessive force against any person or property is prohibited.

b. An employee shall only use necessary force against another person to effect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, or defend himself or another from physical assault. In any event, only the nature and amount of force deemed reasonably necessary by a prudent person to accomplish a lawful purpose shall be used.

On August 20, 1992, after an internal review, Glass was dismissed from the Atlanta Police Department for violations of Rules 1.03 and 2.50. Subsequently, he moved for an expedited appeal of his dismissal to the Atlanta Civil Service Board. However, because of the significant number of appeals already pending, his motion was denied.

Beginning on September 20, 1994, and continuing for several days over the next four months, the Board held a hearing on the appeal of Glass's dismissal. During the hearing, the Board heard testimony from all of the officers involved in the incident, including Glass, and from Eric Patterson. The Board also heard testimony from a police academy instructor and the former police chief, both of whom testified that Glass's choking of Patterson constituted impermissible excessive force. In addition, the emergency room physician who examined Patterson testified that Patterson's symptoms were consistent with having been choked. On March 22, 1995, two months after the hearing concluded, the Board issued an order, finding inconclusive evidence that Glass was untruthful but affirming Glass's dismissal for use of excessive force. Thereafter, Glass petitioned the superior court for a writ of certiorari, seeking a review of the Board's denial of his appeal. However, due to the replacement of the judge originally assigned to review the matter, miscommunications as to the matter's status, and confusion as to the location of various portions of the record, the superior court did not review Glass's petition for nearly 12 years. On June 4, 2007, the superior court issued an order, affirming the Board's decision and thus upholding Glass's dismissal. This discretionary appeal followed.

1. We first address Glass's contention that the evidence was insufficient to support the Board's decision to affirm his dismissal from the police department for the use of excessive force. "The appropriate standard of review to be applied to issues of fact on writ of certiorari to the superior court is whether the decision below was

supported by any evidence." *City of Atlanta Govt. v. Smith*.[2] On appeal to this Court, "our duty is not to review whether the record supports the superior court's decision but whether the record supports the initial decision of the local governing body or administrative agency." *Emory Univ. v. Levitas*.[3]

Here, Patterson and one of the other officers involved in the incident testified that Glass unnecessarily grabbed Patterson by the throat and began choking him while attempting to arrest him. The emergency room physician who examined Patterson testified that his symptoms were consistent with those of someone who had been choked. Additionally, both the former police chief and an instructor at the police academy testified that choke holds, such as the one used by Glass, violated police department policy and constituted excessive force. Glass nevertheless contends that the evidence was insufficient to support the Board's decision, arguing that there was conflicting testimony, that some of the testimony against him constituted hearsay, and that some of the witnesses who testified against him were not credible. He further argues that the Board did not consider evidence that his punishment of dismissal constituted disparate treatment. None of these arguments warrants reversal of Glass's dismissal from the police department.

"Even evidence which barely meets the 'any evidence' standard is sufficient, and the presence of conflicting evidence nonetheless meets that standard." *Dept. of Community Health v. Pruitt Corp*.[4] In addition, as to hearings before the Board, former City of Atlanta Code of Ordinances § 5-3066 (currently Art. VI, § 114-552) provides that: "Formal, legal rules of evidence shall not be strictly applied." Thus, even if some of the testimony against Glass constituted hearsay, the Board was not prohibited from considering such evidence. Furthermore, given its decision, the Board found the testimony against Glass to be credible and chose to discount the evidence of alleged disparate treatment. Neither this Court nor the superior court is "authorized to substitute its judgment as to weight and credibility of witnesses." *Pitts v. City of Rome*.[5] See *Coweta County v. Henderson*.[6] Accordingly, there was sufficient evidence to support the Board's decision to affirm Glass's dismissal.

2. In his first and second enumerations of error, Glass contends that the Board violated his due process rights when it failed to conduct a hearing on the appeal of his dismissal within 60 days,

[2] *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 865 (1) (493 SE2d 51) (1997).
[3] *Emory Univ. v. Levitas*, 260 Ga. 894, 898 (1) (401 SE2d 691) (1991).
[4] *Dept. of Community Health v. Pruitt Corp.*, 284 Ga. App. 888, 890 (645 SE2d 13) (2007).
[5] *Pitts v. City of Rome*, 256 Ga. App. 278 (1) (568 SE2d 167) (2002).
[6] *Coweta County v. Henderson*, 270 Ga. App. 153, 154 (606 SE2d 7) (2004).

pursuant to former City of Atlanta Code of Ordinances § 5-3064 (1), and when it failed to conduct that hearing on consecutive days. However, in his brief, Glass only argues that his dismissal should have been reversed because his statutory right to a hearing within 60 days under § 5-3064 (1) was violated and because this violation caused him harm. We disagree.

(a) *City Ordinance is directory.* Former City of Atlanta Code of Ordinances § 5-3064 (1), which pertained to the procedures for Civil Service Board hearings, in part provided: "The hearing shall be held within 60 days after receipt of the notice of appeal by the director of the bureau of labor relations. . . . Any hearing officer/panel shall have the authority to postpone or to continue a hearing upon its own motion or upon the motion of either party." There was no language in the ordinance stating that hearings were to be held on consecutive days until concluded.

In this matter, Glass moved for an expedited appeal and hearing. The Board denied his motion and explained that because of the tremendous volume of appeals that had been filed prior to his, it was impossible to schedule his appeal within 60 days as directed by § 5-3064 (1). Despite this explanation, Glass contends that the use of the word "shall" in the ordinance mandated that a hearing on an appeal be held within 60 days and argues that the Board's failure to hold a hearing on his appeal within that time frame should have resulted in a reversal of his dismissal.

In *Hardison v. Fayssoux*,[7] this Court recognized that "in its ordinary signification 'shall' is a word of command, and the context ought to be very strongly persuasive before that word is softened into a mere permission." (Punctuation omitted.) However, we also noted that "in the absence of injury to the defendant, a statute which directs that some act be done within a given time period, but prescribes no penalty for not doing it within that time, is not mandatory but directory; that is, that in such instances 'shall' denotes simple futurity rather than a command." Id. Here, former City of Atlanta Code of Ordinances § 5-3064 (1) prescribed no penalty for a failure to comply. In fact, the ordinance authorized the Board to postpone hearings. Thus, the provision in § 5-3064 (1) that stated that hearings were to be held within 60 days was directory and not mandatory. See *Hardison*, supra, 168 Ga. App. at 400. Furthermore, the ordinance did not require that a hearing be conducted over consecutive days until concluded, and Glass has failed to cite any authority in support of such a requirement.

---

[7] *Hardison v. Fayssoux*, 168 Ga. App. 398, 400 (309 SE2d 397) (1983).

(b) *Glass failed to demonstrate that the delay of his hearing caused harm.* Glass also argues that the two-year delay between his notice of appeal to the Board and the hearing harmed him because his witnesses' recall of details of the incident was impaired and because he lost back pay. We disagree.

During the hearing before the Board, two of the officers who were involved in the incident testified that they could not recall all of the details regarding Patterson's arrest. However, the fact that witnesses' memories may have faded is not sufficient to show that Glass was harmed. See *Parker v. State*.[8] Furthermore, both of those officers specifically testified that they did not observe Glass using excessive force in arresting Patterson. In fact, one of those officers testified, in support of Glass's testimony, that Patterson violently resisted being handcuffed and struggled throughout the arrest. Thus, Glass has failed to show that the inability of witnesses to recall all the details surrounding Patterson's arrest has caused him harm.

Additionally, Glass's argument that he suffered harm from the delay of his hearing in the form of loss of back pay is without merit. "[P]rocedural flaws in the manner in which the termination was carried out will not warrant damages to compensate for losses that naturally result from a justified termination." *Savannah College of Art & Design v. Nulph*.[9] Here, the evidence demonstrates that the city was justified in dismissing Glass from the police department for excessive use of force. Therefore, his dismissal would have occurred even if there had been no delay of the hearing of his appeal. See id.; *Dept. of Corrections v. Mack*.[10] Thus, Glass has failed to show that he suffered harm from the delay in the form of loss of back pay.

In summary, because former City of Atlanta Code of Ordinances § 5-3064 (1) was directory, rather than mandatory, and because Glass has not demonstrated that he was harmed by the delay of his hearing, neither the Board nor the superior court erred in failing to reverse Glass's dismissal based on that delay.

3. In his third enumeration of error, Glass contends that the Board violated his rights to due process by failing to file the complete record with the superior court following his petition for a writ of certiorari. However, he has failed to support this enumeration of error by argument or by citations to authority, as required by Rule 25 of this Court. "This enumeration of error is therefore deemed

---

[8] *Parker v. State*, 283 Ga. App. 714, 718 (2) (d) (642 SE2d 111) (2007).
[9] *Savannah College of Art & Design v. Nulph*, 265 Ga. 662 (1) (460 SE2d 792) (1995).
[10] *Dept. of Corrections v. Mack*, 217 Ga. App. 862, 865 (1) (459 SE2d 573) (1995).

abandoned as provided under Rule 25 (c) (2) . . . of this Court." *Rice v. Lost Mountain Homeowners Assn.*[11]

Nevertheless, in an argument under the heading "Errors 2 and 3," Glass contends that the delay of his appeal to the Board infringed on his property interest in continued employment without the due process of law required by the Georgia and United States Constitutions. We disagree.

Where a public employee can only be terminated for cause, as is the case here, that employee has a property interest in continued employment for due process purposes. See *Brownlee v. Williams*;[12] *Wayne County v. Herrin*.[13] "We interpret the due process clause under our State Constitution as providing the same procedural rights in public employment as the federal due process clause." *Camden County v. Haddock*.[14] See U. S. Const. Amend. XIV; Ga. Const. of 1983, Art. I, Sec. I, Par. I. "Under both clauses, the state must give notice and an opportunity to be heard to a person deprived of a property interest." *Camden County*, supra, 271 Ga. at 665 (1).

Citing *Cleveland Bd. of Ed. v. Loudermill*,[15] Glass argues that the two-year delay of the hearing on his appeal, in and of itself, amounted to a constitutional violation. However, in *Fed. Deposit Ins. Co. v. Mallen*,[16] the United States Supreme Court provided guidance on when a delay in conducting a hearing becomes a violation of the due process clause. In that case,

> the Supreme Court cautioned lower courts not to be improperly concerned with the danger of an interminable delay, but instead to look at the delay in the specific case and what might have happened differently had there been no delay. Specifically, courts should consider the harm to the plaintiff's interest, the justification for the delay offered by the state, and the likelihood that the interim decision may have been mistaken.

(Citation and punctuation omitted.) *Jones v. Chatham County*.[17] As we held in Division 2, Glass failed to show that he was harmed by the

---

[11] *Rice v. Lost Mountain Homeowners Assn.*, 288 Ga. App. 714, 716 (2) (655 SE2d 214) (2007).

[12] *Brownlee v. Williams*, 233 Ga. 548, 551 (1) (212 SE2d 359) (1975).

[13] *Wayne County v. Herrin*, 210 Ga. App. 747, 755 (7) (437 SE2d 793) (1993).

[14] *Camden County v. Haddock*, 271 Ga. 664, 665 (1) (523 SE2d 291) (1999).

[15] *Cleveland Bd. of Ed. v. Loudermill*, 470 U. S. 532, 547 (V) (105 SC 1487, 84 LE2d 494) (1985).

[16] *Fed. Deposit Ins. Co. v. Mallen*, 486 U. S. 230, 242 (III) (108 SC 1780, 100 LE2d 265) (1988).

[17] *Jones v. Chatham County*, 223 Ga. App. 455, 458 (4) (477 SE2d 889) (1996).

hearing's delay, and given the evidence supporting the Board's decision to deny Glass's appeal, the interim decision to dismiss him from the police department was not mistaken. Furthermore, in its order denying Glass's motion for an expedited appeal, the Board explained that its inability to hear Glass's appeal within 60 days was due to the large volume of appeals that were already pending at the time he filed. Under these circumstances, the delay of the hearing on Glass's appeal did not rise to the level of a deprivation of his due process rights. See id. at 458 (4).

Although we ultimately affirm the decisions of the Board and the superior court, we would be remiss in our responsibilities as an appellate court if we failed to express our disapproval with the manner in which this matter was handled by both the Board and the superior court once appellant petitioned for writ of certiorari. The right to petition for writ of certiorari so that the superior court can review a decision of the Civil Service Board necessarily includes the requirement that such a petition be reasonably heard. See *Spradlin v. State*.[18]

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 8, 2008 —
RECONSIDERATION DENIED JULY 24, 2008.

*McKenny & Froelich, William J. McKenny*, for appellant.
*Amber A. Robinson, Marissa M. Key*, for appellees.

---

[18] *Spradlin v. State*, 262 Ga. App. 897, 903 (3) (587 SE2d 155) (2003).
[1] See OCGA § 9-11-56 (c).